### W. E. JOHNSON V. AMARILLO IMPROVEMENT COMPANY ET AL.

#### No. 296.

**1. Certiorari—Practice on Appeal.**

Where the result would not be changed by a consideration of a statement of facts excluded from the record, a motion for certiorari to perfect the record so as to remove the objection to the statement of facts, is properly overruled.......................................... ........................... 508

**2. Giving Note for Antecedent Debt.**

The giving of a promissory note for an antecedent debt will not extinguish it, unless such was the intention of the parties............................. 509

**3. Same—Provisional Payment.**

Contractors owed materialmen, and being pressed for payment, executed their promissory note for a part of the debt. The note was signed by the materialmen as sureties, and money raised on it. At maturity the materialmen paid the note. *Held,* that the original debt to the materialmen was not entitled to a credit for the amount of the note. The note and credit therefor were only provisional..................................................... 510

**4. Mechanic's Lien Based on the Constitution.**

By the Constitution, article 16, section 37, mechanics, etc., have a lien. The Legislature is empowered to "provide by law for the speedy and efficient enforcement of said lien." This power neither includes nor implies the power either to destroy it or to hamper it by unreasonable restrictions... 511

**5. Mechanic's Lien—As Each Item is Furnished.**

The purpose of the Legislature in requiring that the materialman, etc., should give notice to the owner of each item as furnished (Laws 1889, page 110), is to enable the owner to withhold payment to the contractor. But where there has been delay in giving the notice, and the owner has not been prejudiced thereby, we see no reason why the lien should be discharged...... 512

**6. Same.**

To hold otherwise, would cause the statute to impose an unreasonable restriction upon a right given absolutely by the Constitution.................... 512

ERROR to Court of Civil Appeals for Second District, in an appeal from Potter County.

The contention in this case is as to the construction of the mechanic's lien law requiring notice of each item as furnished, and the right to a lien as between the contractors and materialmen; the contractors having executed their promissory note for a part of the claim of the materialmen, which was negotiated upon their indorsement and by them paid at maturity. The owner of the building was privy to the execution and indorsement of the note. The facts are sufficiently set out in the opinion.

*Stephens & Huff*, for plaintiff in error.—1. The court erred in its conclusions of law in finding that the note for $500, made by Wood & Tunnell and indorsed to the bank by Robinson & Abell, was an accepted order, and not a payment for the full amount of the note to Robinson & Abell. Rev. Stats., art. 3178, as amended by Act of 1889; Bank v. Higgins, 72 Texas, 66; Gen. Laws 21st Leg., p. 110, secs. 14, 16; Fullenwider v. Longmoor, 73 Texas, 483; Trammell & Co. v. Mount, 68 Texas, 215, and authorities cited; Lazarus v. Bank, 72 Texas, 354; Bray v. Crain, 59 Texas, 649; Stanley v. Westrop, 16 Texas, 203, 204; Brandt on Surety., sec. 289.

2. The Amarillo Improvement Company became a trustee of all the money due on the building contract for all the parties, and if it permitted the contractors to use it to pay off debts of theirs other than lien debts against the building, this would relieve the sureties on the bond pro tanto. The sureties on payment of the debt secured by lien are entitled to be subrogated to all the securities held by the company. Ryan v. Morton, 65 Texas, 258; Wylie v. Hightower, 74 Texas, 306; Brandt on Surety., secs. 370–372, 374; Id., 2 ed., secs. 426–428; Machine Works Co. v. Templeton, 82 Texas, 446; Willis & Bro. v. McIntyre, 70 Texas, 40; Bank v. Moore, 3 L. R. A., 302; same case, 112 N. Y., 543.

3. Before a claimant can establish his lien in court, it is incumbent on him to show that his claim in every essential particular comes within the terms of the statute; and when the law requires notice to be given to the owner of the building before the lien can be fixed, it is necessary to show such notice by competent evidence. Gen. Laws 21st Leg., p. 110, secs. 3, 5; Lee v. Phelps, 54 Texas, 367; Lee v. O'Brien, 54 Texas, 635; Lens v. Trentune, 54 Texas, 218; Pool v. Sanford, 52 Texas, 621; Reese & Jandson v. Corlew, 60 Texas, 72; 2 Jones on Liens, sec. 1556, p. 507; 15 Am. and Eng. Encyc. of Law, p. 132, sub. 6, note 4, and authorities cited.

*Browning & Madden* and *Thos. F. Turner*, for Robinson & Abell, materialmen.

*Holland, Link & Holland*, for the Amarillo Improvement Company.

GAINES, CHIEF JUSTICE.—The Amarillo Improvement Company, the plaintiff in the trial court, entered into a contract with Wood & Tunnell for the construction of a building upon a lot belonging to the company, in the city of Amarillo. Wood & Tunnell gave a bond for the faithful performance of their contract, with the plaintiff in error, W. E. Johnson, and others, as their sureties. The contractors having failed to complete the building according to the terms of the agreement, the company took possession of the property and finished the structure. This suit was brought by the improvement company against Wood & Tunnell and the sureties on their bond, to recover damages for the breach of the contract. Robinson & Abell, who had furnished lumber for the construction of the house, and others, as claimants of liens upon the property, were made parties defendant. Johnson, the plaintiff in error, was sued both as a surety upon the bond and as the claimant of a lien. All the alleged lien claimants, except Robinson & Abell and Johnson, either made default or disclaimed. Defendants Robinson & Abell pleaded in reconvention an account for lumber furnished for the construction of the building, and asserted a lien therefor. Defendant Johnson, in addition to his defense as surety upon the bond sued upon, also pleaded an account against Wood & Tunnell, and claimed a lien upon the property, but upon the trial the lien was not allowed. The case was tried without a jury, and the court found, in effect, that of the original contract price for the construction of the building the plaintiff had paid all except the sum of $620.69, and that Robinson & Abell had furnished lumber for the construction of the building, amounting in value to the sum of $1805.33, upon which $100 had been paid, and that Wood & Tunnell had given them an order upon the plaintiff company upon the lumber account for $500, which the latter had accepted. The court also found, that Robinson & Abell had a lien upon the property for the payment of their account. Judgment was accordingly rendered in favor of Robinson & Abell against the plaintiff for the $500 and interest, and the plaintiff was ordered to pay what should remain of the $620.69 in their hands, due Wood & Tunnell, after deducting the $500 for which judgment had already been given directly to Robinson & Abell. The latter were also given judgment against Wood & Tunnell for $1205.33, the balance of their account, together with interest thereon, with a foreclosure of a materialman's lien upon the property. There are other details in the judgment, which do not bear upon the questions before us.

The record showing that the statement of facts embraced therein had been filed after the court had adjourned for the term, and no order appearing which authorized its filing after the adjournment, the Court of Civil Appeals declined to consider it, and affirmed the judgment. Motions for a rehearing and certiorari were filed, the latter supported by evidence showing that the order had in fact been made and duly entered upon the minutes of the court, and that the clerk had by inadvertence omitted it from the transcript; but both motions were

overruled.   W. E. Johnson alone applied for the writ of error, and the writ was granted, upon the ground that the Court of Civil Appeals erred in overruling the motion to have the record perfected.

We are of opinion, however, that if the court erred in that particular, the error was harmless.   Neither of plaintiff in error Johnson's assignments in the Court of Civil Appeals, which are relied upon in this court, question the correctness of the trial court's conclusion of fact; and it may be doubted whether, in case the record had been perfected, the evidence should have been considered in determining the assignments.   But having examined the statement of facts, we are of opinion that, if considered, the testimony should not have led the appellate court to a different conclusion.   If it should not, then the motion for a certiorari was correctly refused.   Moore v. Rice, 51 Texas, 289; Davis v. McGehee, 24 Texas, 210.

Two of plaintiff in error's assignments in the Court of Civil Appeals raise the same question, and are as follows:

"1.   The court erred in refusing to apply all of the balance found to be due Wood & Tunnell by plaintiff on the builder's contract between them, to the extinguishment of the lien of $1258.50 on the lots and building in question in favor of Robinson & Abell, instead of paying off the note executed by Wood & Tunnell with Robinson & Abell to the bank for $500.   The $620.69 found to be due Wood & Tunnell on the contract should be applied to the payment of all liens under the contract, and for the protection of the sureties."

"13.   The court erred in its conclusions of law in finding that the note for $500, made by Wood & Tunnell and indorsed to the bank by Robinson & Abell, was an accepted order, and not a payment for the full amount of the note to Robinson & Abell."

The court's findings of fact in relation to the $500 claimed as a credit by these assignments, are as follows:

"The defendants, Robinson & Abell, filed their lien on the 28th day of October, 1891, with the clerk of the County Court of Potter County, their account filed showing a total amount of lumber, $1805.33, to have been furnished the defendants, Wood & Tunnell.   Said lumber was used in the construction of the building in question.   Said account showed a credit of $100, which was paid September 29, 1891; also a credit of $500 by note of defendants Wood & Tunnell, but said note was indorsed by defendants Robinson & Abell to the First National Bank of Amarillo, and when it became due it was paid by defendants Robinson & Abell, and [not] by Wood & Tunnell."

We also quote the testimony on the point, as taken from the plaintiff in error's brief.   Abell, of the firm of Robinson & Abell, testified: "On August 15, 1891, I had been pressing Wood & Tunnell and the plaintiff company for the money due my firm for the lumber we had furnished Wood & Tunnell.   Walter Davis stated the company did not have any money on hand, but that if Wood & Tunnell would give a note, with Robinson & Abell as sureties, that the First National

Bank of Amarillo would let Wood & Tunnell have $500 to pay my firm, and that the plaintiff's company would pay this note out of the first money due Wood & Tunnell after its maturity. Said Walter Davis was cashier of the First National Bank of Amarillo, as well as treasurer of the plaintiff company. Said Walter Davis then drew a note, dated August 15, 1891, for $500, due sixty days after date, payable to the order of the First National Bank, at its banking house in Amarillo, Texas, and Wood & Tunnell signed said note, and I signed the name of Robinson & Abell, at the request of the defendants Wood & Tunnell, as their sureties. * * * Wood & Tunnell failed to pay said note at maturity, and the firm of Robinson & Abell paid off the same. * * * On October 26, 1891, Wood & Tunnell gave me an order on the treasurer of plaintiff, as follows: 'Office of Wood & Tunnell, Architects and Contractors, Vernon and Amarillo. Amarillo, Texas, October 26, 1891.—To Treasurer of Amarillo Improvement Company: Please pay Robinson & Abell, on lumber bill, the sum of five hundred dollars, and charge to account of Wood & Tunnell. [Signed] Wood & Tunnell, per Wood.' This order has no written acceptance on it by the Amarillo Improvement Company, but the treasurer told Robinson & Abell that the company was not due Wood & Tunnell anything, but they would have some due them in a few days, and they would pay it."

Was this an absolute payment of $500 upon the lumber bill? We think that the court correctly held that it was not. It is apparent that the money was procured upon the credit of Robinson & Abell. They had to pay it back; and their position would have been no better had they simply accepted Wood & Tunnell's promissory note, and discounted it in bank, and the latter had failed to pay it. Upon the question, whether the giving of a promissory note for an antecedent debt operates to extinguish a debt, there is a conflict in the authorities. This court has held that it does not, unless the circumstances show that such was the intention of the parties. McGuire v. Bidwell, 64 Texas, 43. This ruling is in accordance with the great weight of authority. See opinion of Chief Justice Marshall in Hamilton v. Cunningham, 2 Brock., 350.

In Wheeler v. Schroeder, 4 Rhode Island, 383, a contractor to erect a building received on account, among other things, his employer's promissory notes, and receipted for them as being in full payment of account to date. It was conceded, that if the notes were an absolute payment the mechanic's lien was discharged; but the court held that the payment was merely provisional, and that the lien was not released. The court there held, that in order to make the taking of the note or draft of the debtor a final discharge of the pre-existing debt, the proof must be clear that such was the intention of the parties.

In Kean v. Dufresne, 3 Sergeant & Rawle, 233, Dufresne sued Kean and Foster to recover a balance upon a promissory note made by them to him. The defense was, that when the note was given the defendants

were partners, and that after the dissolution of the partnership, Kean gave the plaintiff another note in satisfaction thereof. It was proved that the latter note was given to the plaintiff, who indorsed it and had it discounted in bank, and applied the proceeds to the credit of Kean and Foster; but it was protested when due, and he paid the amount and took back the note. In deciding the case, the court say: "It appears in this case, that the note set up as an extinguishment of the debt of Kean and Foster was no more than a note put into the bank for the purpose of raising money for Kean and Foster. Therefore, it can be no extinguishment. The note in fact was not parted with by Dufresne, but for the purpose of raising money for Kean and Foster." The judgment for the plaintiff was accordingly affirmed.

In Crane v. Clay, 25 English Law and Equity Reports, 451, the court say: "A bill given for and on account of money due on a simple contract operates as a conditional payment, which may be repudiated at the option of the creditor, if the bill be unpaid at maturity in his hands, in which case he may rescind the transaction of payment and sue on the original contract." See also Crary v. Bowers, 20 Cal., 85.

The principle of the cases cited applies to the case before us. The payment of the $500 was provisional; that is, it was good until Wood & Tunnell failed to pay the note, and Robinson & Abell were obliged to discharge it. A credit for the sum was properly entered on the account; but the credit was also provisional, and when Robinson & Abell were compelled to pay back the money, it lost its effect, and was in law cancelled.

For another reason, we think that the judgment of the court is correct. When the note was executed to the bank, the treasurer of the plaintiff corporation, who was also the cashier of the bank, agreed to pay it out of the first money due to Wood & Tunnell after its maturity, and subsequent to the time when Robinson & Abell paid the note, Wood & Tunnell gave them an order for the $500, which was also accepted, to be paid out of the first money which should become due to the drawers. Wood & Tunnell had the right to direct the payment of any part of the money due or to become due to them under their contract, to any subcontractor, materialman, or laborer who had acquired or was in position to acquire a lien upon the building for labor or material furnished in its construction. The circumstances show, that it was the intention of the parties that the note was to be paid out of the fund; and we think it is also apparent, that it was contemplated that the draft should be paid from the same source. This, it would seem, would make an equitable assignment of so much of the fund, and would authorize the court, in the adjustment of the equities between the parties, to decree that the plaintiff company should pay from the money found due to Wood & Tunnell the amount which the latter had directed it to pay. Harris County v. Campbell, 68 Texas, 22.

The plaintiff in error assigns in this court, that the Court of Civil Appeals erred in not sustaining his third assignment of error in that court, which is as follows: "The court erred in holding that Robinson & Abell had a lien except for the items that accrued on his account with Wood & Tunnell after August 14, 1891, that being the first time any notice of the items was given the plaintiff, which amount to the sum of $521.57." The finding of the trial court which bears upon this assignment is as follows: "The defendants Robinson & Abell, on the 14th day of August, 1891, delivered to the secretary of the plaintiff company an itemized statement of lumber that had been furnished to the defendants Wood & Tunnell, and used in the construction of the building in question, and from time to time as the lumber was delivered, up to the time the lien was filed, furnished said secretary of the plaintiff company with similar statements of the lumber furnished, and for which the lien was filed." It may be conceded, for the purposes of this opinion, that the record shows that all the lumber, except the last items which appear upon Robinson & Abell's account, amount in value to $527.21, were furnished to the contractors prior to August 14, 1891, and that no notice was given to the improvement company prior to that date. ·

Section 37 of article 16 of the Constitution provides, that "Mechanics, artisans, and materialmen of every class shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor, and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." This provision, as we have frequently held, gives the lien, and simply makes it the duty of the Legislature to provide for its enforcement. It is manifest that this differs materially from other provisions found in our Constitution which confer a right or a jurisdiction to be exercised "under such regulations as may be provided by law." It may be conceded, that from the necessity of the case it must have been contemplated, that in providing for the enforcement of the laws given by the section quoted, the Legislature should have the power to make such reasonable regulations as are requisite to protect the rights of all persons who may have an interest in the contract or in the property. But the power to facilitate the enforcement of a lien neither includes nor implies the power either to destroy it or to hamper it by unreasonable restrictions. In construing the statute made in pursuance of this constitutional provision, we should not impute to the Legislature an intention to violate either its letter or its spirit by imposing upon the lienholder unreasonable and unnecessary restrictions. The third section of the Act of April 5, 1889, is in part as follows: "Any person or firm who may furnish any material to any contractor, to be used in the erection of any house, building, or improvement, or to repair any house, building or improvement, by giving written notice to the owner of such house, building, or improvement, or his agent or representative, of each and every item as it is

furnished, and by showing how much there is due and unpaid on each bill of lumber furnished by said lumberman or materialman under said contract, at any time within ninety days after the indebtedness shall have accrued, fix and secure the lien provided for in this act, at the time or subsequent to the giving of the written notice above provided for, by filing, in the office of the county clerk of the county in which such property is situated, an itemized account of his or their claim, as provided in this section, and cause the same to be recorded in a book kept by the county clerk for that purpose." Laws 1889, p. 110. The object of the act in requiring notice to be given to the owner of each "item as it is furnished" was to advise him as to the lien, and thereby to enable him to save himself from loss, by withholding from any amount which might be due to the contractors a sufficient sum to discharge it; and it may be, that should a materialman fail to give immediate notice of any material furnished, and should the owner pay out all that is due to the contractor under the contract, the lien would be lost. But where there has been delay in giving the notice, and the owner has not been prejudiced thereby, we see no reason why the lien should be discharged. To so construe the provision would cause it to impose an unreasonable and unjust restriction upon a right given absolutely by the fundamental law. Such a construction is not to be tolerated. No injury has resulted to the owner from the delay in this case, if delay there was; and he has not complained. Should the contractors to whom the lumber was furnished, and who knew the facts, or their sureties, who stand in their shoes, be permitted to object? We think not. We therefore conclude, that the trial court and the Court of Civil Appeals properly held that Robinson & Abell had a lien upon the property for the balance due upon their account for the lumber furnished for the construction of the building.

We remark, however, that looking to the statement of facts, Abell testified as follows: "I know I gave him (McGowan's secretary) regular notices of all the lumber I furnished the said Wood & Tunnell, according to the account filed by me to fix the materialman's lien, which account is attached to my answer herein, and which I have introduced in evidence." And the plaintiff admitted, as true, all the facts to which witness Abell had testified.

For the reasons given, we are of opinion, that whether the statement of facts be considered or not, the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Delivered June 13, 1895.