### Riter & Conley v. Houston Oil Refining and Manufacturing Company.

Decided November 17, 1898.

**1. Mechanic's Lien—Subcontractor's Claim Dependent.**

The right of a materialman claiming a lien on the property of the owner depends upon the original contract between the contractor to whom the materials were furnished and the owner and upon its amount, and the materialman can not demand of the owner money beyond that amount and which by the terms of the contract was never due the original contractor.

**2. Same—Notice by Subcontractor Too Late, When.**

Payments made by the owner in a contract before notice by a materialman of his claim pass beyond the reach of a lien thereafter asserted.

**3. Same—Affidavit—Agency.**

An affidavit made by an agent of a materialman to a filed account need not state the fact of agency, as the statute does not require this.

**4. Same—Subcontractor's Claim—Filing.**

A materialman may establish his lien by filing a bill of items where he does not have and is not entitled to possession of all the papers and letters constituting the contract for furnishing the material.

**5. Same—Affidavit to Subcontractor's Claim—Notice.**

It is not necessary that a subcontractor's affidavit to his claim of lien should state that notice had been given to the owner as the items thereof were furnished.

APPEAL from Harris. Tried below before Hon. W. H. Wilson.

*W. S. Hunt* and *Smith & Baldwin,* for appellants.

*Hutcheson, Campbell & Myer,* for appellee Houston Oil Company.

*Baker, Botts, Baker & Lovett,* for appellee National Cotton Oil Company.

WILLIAMS, Associate Justice.—This action was brought by appellants against the Houston Oil Refining and Manufacturing Company

and the National Cotton Oil Company to establish and enforce, against real property formerly owned by the first named company and conveyed by it to the last named company, a lien for the sum of $2157.81, the unpaid balance due plaintiffs from W. E. Thomas for the value of material furnished to him by plaintiffs to enable him to erect upon such property certain oil tanks under and by virtue of a contract between Thomas and the Houston company, then the owner of such property, and which material was used by Thomas in making such improvement.

No statement of the pleadings further than is incidentally made in the course of the opinion is deemed necessary. They raised the questions discussed.

The facts are stated in the findings of the trial judge, found in the record, which are adopted. We also agree with the views of the law expressed by the trial court, except in the one or two particulars which will be indicated.

Thomas, on the 2d day of June, 1893, made a contract with the Houston company for the erection of sixteen oil tanks on the property in question, to be completed for use on or before the 15th of August thereafter. The contract contained specifications as to the character of the improvement, which we do not consider it material to state. For the improvement, the company agreed to pay Thomas $6860, of which one-half was to be paid upon delivery upon the ground of all of the material, 25 per cent was to be paid when the company was satisfied that such additional sum had been earned, taking into consideration the contract price and the entire work to be performed, and the remaining 25 per cent was to be paid when the work was completed according to specifications of material, character of work, and time.

Thomas, by correspondence, made a contract with plaintiffs, who did business at Pittsburg, Pa., to furnish the material ready prepared for erection into tanks, which contract consisted of a letter from Thomas to plaintiffs of date June 30, 1893, giving the specifications, stating the contract with the Houston company, and stating that he could pay 50 per cent of whole cost on arrival of material on the ground, and the remainder in sixty days, and asking the price at which plaintiffs could furnish the material; a telegram and letter from plaintiffs to Thomas of June 7th, giving price per pound; a telegram and letter from Thomas to plaintiffs of June 7th, accepting the offer, the letter adding, "when tanks are completed we will remit you balance without any regard to the sixty days time before mentioned." The material was not furnished by plaintiffs in time for the completion of the tanks by August 15th, and Thomas did not complete them by that time, and never completed them according to contract, though he did erect them, using the material furnished by plaintiffs. About October 15, 1893, Thomas abandoned the work without putting the tanks in the condition stipulated, and the evidence upon the trial showed that it would cost at least $2089.84 to put them in such condition. In accordance with the contract with Thomas, the Houston company paid him the sum of $4443 of the contract price,

before it was notified by plaintiffs of their claim against Thomas or of any intention of theirs to assert a lien. The company, before such payments, knew that Thomas had purchased the material from plaintiffs, but did not know that it had not been fully paid for until November 2, 1893; and it made no inquiry upon the subject. About September 1, 1893, Thomas paid plaintiffs all of their claim except the sum of $2157.81.

On the 2d day of November, 1893, plaintiffs properly delivered to the Houston company a written notice of their claim, showing all of the items of their account and the balance due them.

On the 18th day of November, 1893, plaintiffs filed with the county clerk an itemized bill and list of all the items furnished Thomas, showing balance due, and along with it filed original letters and telegrams from Thomas to them and copies of theirs to him. Attached to these was an affidavit of one John S. Craig which followed literally the form of affidavit prescribed in section 5 of the Act of 1889, page 112, except that it stated that plaintiffs had furnished the Houston company's president with notice in writing of each item of said account, and the balance due thereon, etc., and did not state that such notice was given by affiant, and did not state that such notice was given of each item "as same was furnished" to Thomas.

The affidavit does not state that Craig was agent or acted for plaintiffs. No reason was alleged or shown why plaintiffs did not procure and file the original letters and telegrams from themselves to Thomas. The Houston company before receiving this notice had denied its liability to Thomas for the balance unpaid of the contract price, on the ground that Thomas had not performed his agreement, and thereafter denied any liability to plaintiffs.

On the 27th of October, 1893, Thomas brought suit against the Houston company for the balance of the contract price, in which the defendant pleaded in reconvention for damages. After the plaintiffs had notified the company of its claim and filed the same as above stated, the company and Thomas settled their suit by an agreement under which the company agreed to pay him $374.53, and Thomas agreed to pay the costs and have judgment entered against him. This was done, the company paying Thomas $300 in cash and paying the other $74.53 upon costs assumed by Thomas. The company afterwards paid $27.90 in discharge of some costs which seem to have been left unprovided for, or overlooked, in the settlement.

There is some conflict in the evidence upon the question as to whether or not the Houston company really owed Thomas upon the contract the sum thus paid, or paid it merely as compromise because it wanted to sell the property. The evidence we think sufficient to sustain the finding of the court, that the money was paid as a balance due after deducting the real amount of the counterclaim of plaintiffs against Thomas for noncompletion of his contract, and that such claim did not amount to more than $2089.84. The testimony on this trial would have warranted the court in finding that the cost of putting the tanks in the condition

required by the contract would have amounted to as much as $3000, but in view of Thomas' evidence and the fact of the settlement, we can not say that the finding made is not warranted.

Riter & Conley brought suit against Thomas the 18th of November, 1893, and subsequently, and before the present suit was begun, obtained judgment against him for the amount herein sought to be charged on the land.

The Houston company on the 24th of July, 1895, conveyed to its co-defendant herein, the National company, the premises upon which the tanks had been erected, including them, the deed reciting a paid consideration, but of its payment there is no direct evidence, though the witnesses speak of the transaction as a "purchase" and a "sale," and speak of "dickering" about the trade. We conclude that the trial court properly declined to accept this as evidence of payment of a consideration, when the parties who made it could have testified so easily to the fact.

Without detailing the evidence, we adopt the finding of the trial judge that the tanks were so annexed to the realty and were such a necessary part of the appliances for the prosecution of the business and the use of the land for which the whole improvement was made, that they should be treated as fixtures.

All of the parties have appealed and assigned errors.

1. The first contention of plaintiffs is, that the defendants were not entitled to be allowed, as against plaintiffs' claim, sums paid to Thomas and deductions on account of his nonperformance of the contract. As to this, we will only say at this point that the statute as construed by the Supreme Court makes the right of one who furnishes material to the principal contractor, to charge the property of the owner with a lien, depend on the contract which such owner has made. It is only by entitling himself to demand of such owner payment of money owing by him under his contract that one who has no contract with the owner can charge his property. Fullenwider v. Longmoor, 75 Texas, 484.

We do not see that the present statute contains anything introducing a rule different from the one deduced from that construed in that decision. See also Johnson v. Improvement Co., 88 Texas, 512; Gilmer v. Wells, 43 S. W. Rep., 1059; Breneman v. Lumber Co., 34 S. W. Rep., 203; Horn v. Franks, 51 Texas, 404; Shields v. Morrow, 51 Texas, 399; Dudley v. Jones, 77 Texas, 70. The right of plaintiffs depending upon the contract between the Houston company and Thomas, they can not demand of that company money which it never became liable to pay to Thomas. The full contract price could only have become due to Thomas upon his performance of his undertaking. The other contracting party never became indebted to him for work which he did not do as agreed upon, but was bound to pay him only for what he did. The finding of the court is, in effect, that the payment made compensated him fully for all that he did. The payments were made before the owner of the property was notified of plaintiffs' claim, and hence under the statute and the

decisions the sums so paid passed beyond reach of any lien which plaintiffs could afterwards assert.

2.   We think that the pleadings of the defendant, in the absence of special exceptions, set up sufficiently to admit evidence the defenses discussed above.

3.   We think that the seventh assignment of error, that the court erred in holding the affidavit to the filed account insufficient to comply with the statute, is well taken.   The statute uses no language which is equivalent to an express requirement that the affidavit when made by an agent must state the fact of agency.   A form is expressly prescribed which gives the language to be used both when the affidavit is made by affiant for himself and when it is made for another person, and uses no words intended to show authority to act for such person.

We do not think that a court should add to a statute thus specific other terms to be used in the affidavit as essential to the lien.   We are not holding that the agency must not exist; that question is not presented, since Craig was undoubtedly agent for plaintiffs.   We simply hold that, as the statute has not required the affidavit to state the agency, the courts should not require it to the defeat of the lien.   Since plaintiffs did not have, and were not entitled to possession of all of the papers constituting the contract, the case was one in which, under the decision in Elevator Company v. Maverick, 88 Texas, 497, 498, it was permissible for plaintiffs to fix their lien by filing the bill of items.   That decision was made in the case of an original contractor, but the language of the statute affecting this point is the same with reference to all persons seeking to establish a lien. It may admit of doubt whether or not, under section 30 of the Act of 1889, materialmen are required to file a contract at all.

This view of the case makes it unnecessary to pass upon the sufficiency of the papers filed as the contract to comply with the statute.

4.   Under the decisions of the Supreme Court in Johnson v. Improvement Company, 88 Texas, 511, the notice to the owner of the property on November 2, 1893, and the subsequent filing of the claim, fixed plaintiffs' lien for the amount that such owner, at the time of such notice, owed Thomas.   The fact that notice of the items was not given as they were furnished does not prevent plaintiffs from reaching the amount which the company had not paid over before notice was received.   And hence in such a case it was unnecessary that the affidavit to the claim should state that the notice had been given as the items were furnished.

From these conclusions it follows that we hold the judgment of the District Court to be correct, though the judge reached it by a different course of reasoning.

This disposes of the assignments made by plaintiffs and of some of the cross-assignments.   The other cross-assignments will be briefly disposed of.

The plaintiffs' cause of action against Thomas was founded on a written contract and would not be barred within two years as contended. The lien could be enforced until the four years had expired, which was

not the case here. Whether or not the judgment against Thomas would make a longer period applicable we need not decide, as in no view would the action be barred.

The court might properly have found that $374.53 was due to Thomas when notice was served on the Houston company. That sum was paid to him, or for him. The finding of a less sum can not be made the ground of complaint by the appellees.

The questions made as to payment of consideration by the National company, and as to whether or not it was an innocent purchaser, are disposed of by our conclusion that the lien was sufficiently fixed.

The judgment is affirmed.

*Affirmed.*