DARBY et al. v. FARMERS' STATE BANK
OF BURKBURNETT.   (No. 2140.)

(Court of Civil Appeals of Texas.  Amarillo.
May 16, 1923.  Rehearing Denied
June 20, 1923.)

1. Novation ☞7—Mutual intent to substitute
new obligation for old essential to "novation."

Novation is the substitution by mutual
agreement of a new debt or obligation for an
old, thereby extinguishing the original, and the
obligor's intention that the new obligation shall
satisfy the old is not alone sufficient to consti-
tute novation.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Nova-
tion.]

2. Bills and notes ☞499—Novation ☞12—No
presumption of novation by execution of new
note.

There is no presumption of the extinguish-
ment of a note by the execution and delivery
of a new note, but the burden of proving nova-
tion is upon the one asserting it.

3. Bills and notes ☞499—Novation ☞12—
Renewal note not presumed in payment of
original.

Where the original note is retained by the
creditor, there is no presumption that a renew-
al note was taken as payment or as novation;
but, in the absence of evidence to the contrary,
it will be presumed that such note is held as
renewal or as collateral.

4. Novation ☞13—Novation by acceptance of
renewal note issue of fact.

Where the owner of a note accepts a re-
newal note without surrendering the original,
the issue of novation is one of fact.

5. Banks and banking ☞109(3)—Cashier of
bank without implied authority to accept re-
newal note as novation.

Ordinarily a bank cashier has no implied au-
thority to accept a renewal note in payment for
the original, so as to release the parties on the
latter.

6. Appeal and error ☞1011(1)—Finding of
trial court on conflicting evidence conclusive.

Finding of the court on conflicting evidence
that acceptance of renewal note was simply an
agreement to extend time of payment, and was
not a novation or in payment or discharge of
original note, is binding on the appellate court.

7. Bills and notes ☞140—Renewal note omit-
ting waiver held not to require bank to give
surety notice or bring suit in order to hold
indorsers.

Where the terms of a note waived grace,
protest, notice, and presentment, and contained
a consent to the extension of time of payment
without notice, a renewal note merely executed
to extend time of payment, omitting such waiv-
er, would not have the effect of requiring notice
to the indorsers or suit by the holder to hold
them liable.

8. Bills and notes ☞256—Indorsers not re-
leased by renewal note, executed for exten-
sion of time, for which there was no consid-
eration.

By section 120 of Negotiable Instruments
Law (Vernon's Ann. Civ. St. Supp. 1922, art.
6001—120), providing that a person secondarily
liable on the instrument is discharged by an
extension of time, binding on the holder if made
without his assent, held, that a renewal note
made merely to obtain an extension of time,
did not release the sureties where there was
no consideration paid for such extension, and
the sureties had the right at any time to pay
off the original note and enforce collection
against the principal.

9. Bills and notes ☞256—Renewal note does
not release indorsers where recourse ex-
pressly reserved.

Under section 120, of Negotiable Instru-
ments Law (Vernon's Ann. Civ. St. Supp. 1922,
art. 6001—120), indorser of a negotiable in-
strument is not discharged by the taking of a
renewal note, where the extension of time is
granted with the express reservation of all
rights against indorsers.

10. Appeal and error ☞846(6) — Where no
findings filed, finding supported by evidence
implied to support judgment.

On an appeal by indorsers of a promissory
note from a judgment holding them liable where
the court filed no findings of fact, it will be
implied that the court found that the plaintiff
bank, in accepting a renewal note, expressly re-
served its right against sureties where the evi-
dence in the record is sufficient to sustain the
judgment on such theory.

11. Pleading ☞248(4)—Suit on renewal note
held not an election precluding an amendment
to set up original note.

In an action against indorsers on a negoti-
able note, where the evidence showed that the
cashier of plaintiff bank delivered the original
note and the renewal note to attorneys with
instructions to file suit, the mistake of the at-
torneys in bringing suit upon the second note
alone was not an election by plaintiff to stand
on such renewal note, the cause of action be-
ing the debt due the bank, and an amendment
setting up the original note being not only
proper but required of plaintiff's attorney.

12. Appeal and error ☞931(6)—Court pre-
sumed not to have considered incompetent tes-
timony.

Where the trial is before the court and
there are no findings of fact, it is presumed that
the court did not consider incompetent testi-
mony where admissible evidence sustains the
judgment.

13. Evidence ☞121(8) — Conversation with
maker at execution of renewal note admissi-
ble as res gestæ against sureties.

In an action by a bank, the holder of a ne-
gotiable note, against the sureties thereon,
where defendants contended that the renewal
note pleaded released them from their obliga-
tion on the original note, evidence by the cashier
as to conversation with the maker of the notes
at the time of the renewal note, with reference

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

thereto, was admissible as res gestæ, and not improper as hearsay.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Farmers' State Bank of Burkburnett against J. H. Darby and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Lyle Saxon, of Dallas, for appellants.

Cook, Spencer & Stacy, of Wichita Falls, for appellee.

HALL, C. J. The appellee bank filed this suit in the district court of Wichita county, on November 3, 1921, against F. L. McCoy, as maker, and R. T. Harris and J. H. Darby, as indorsers, upon a promissory note. The note made an exhibit to the petition, is dated May 19, 1921, and is a promise 90 days after date to pay without grace to said bank the sum of $9,000, with interest at the rate of 10 per cent. from date, and contains the usual provision for 10 per cent. attorney's fees. It is further alleged that the note is a renewal of a former note, executed by defendants on the 18th day of November, 1920, due six months after date, for the sum of $9,000, and that attached to said first note was certain collateral described in the petition.

On December 15, 1921, Harris and Darby answered by general demurrer, special exceptions, and a motion to quash the citation. On December 20th following the bank amended the petition, correcting the defects pointed out in the special exception, and on January 7, 1922, Harris and Darby again answered by general demurrer, special exception, and pleaded specially that on November 18, 1920, F. L. McCoy and the cashier of the appellee bank presented to them a certain note executed by McCoy as principal, which they, Harris and Darby, indorsed, but that on or about May 19, 1921, when said note of November 18, 1920, became due, they were notified of the maturity of said note, and that McCoy presented to them a plain promissory note payable to the bank and executed by himself, which they indorsed with the specific understanding that said note, which was originally sued on, took up the original note, and that said new note did not have any waiver clause therein, that they, as indorsers thereon, did not waive grace, protest, notice, and presentation for payment, nor did they consent that the time of payment might be extended without notice to them; that, when the renewal note originally sued on by plaintiff became due, they received no notice whatever in writing or otherwise, informing them that the note was due and payable at said bank, or that McCoy, the maker thereof, had defaulted in payment; that the first notice they received from the bank that McCoy had defaulted was on or about the 29th day of August, 1921; and that the failure of the bank to notify them promptly, in accordance with the Negotiable Instruments Law, of such default, had released them from any liability upon said note, or the renewal. On January 12, 1922, the bank amended its petition and in lieu of its original petition, filed on the 3d day of November, alleged that the defendants McCoy, Harris, and Darby had executed and delivered to plaintiff their certain note due six months after date, payable to plaintiff in the sum of $9,000; that McCoy had signed the note upon its face as principal; that Harris and Darby had indorsed the same; and that said note contained the following waiver:

"Each maker, surety, and indorser hereon waives grace, protest, notice, and presentment for payment, and consents that at the time of payment may be extended without notice."

Said amended petition further alleges that there was attached to said note certain shares of bank stock; that the note was long past due; and that all defendants had been duly notified and had defaulted in payment. It prayed for judgment upon the first note. Thereupon on January 12, 1922, the indorsers, Harris and Darby, answered and moved to strike the amended petition, because the original petition sought a recovery upon the second note, dated May 19, 1921, alleging that it was a renewal of the first note dated November 18, 1920, while the amended petition sought to recover upon said note; that, having elected to sue upon the renewal note, the original petition set up a new and inconsistent cause of action; that it was specifically understood, at the time the last note was executed, that it would take up the original note, and that the new note had no waiver clause in it, and that they had not waived the necessity of presentation for payment, notice, etc., of the last note; that no notice had been given them, and that they were therefore relieved of any liability as indorsers. In reply to this answer, the bank, by supplemental petition, denied the allegations of the amended answer, and alleged that the second note was never accepted by the bank in lieu of the first note and as a novation thereof, but was accepted as evidence only of the fact that the original note had been extended by agreement; that the presentation of the second note was the result of a conspiracy between defendant McCoy and the indorsers; that it was understood that the new note, executed May 19th and originally sued on, was to be held by the bank and was to be attached to the original note, simply and solely as evidence of the agreement to extend the original note sued on in the amended petition. In the alternative the bank prayed that in case the court should hold that the last note, executed by McCoy and indorsed by Harris and Darby, was a new note and constituted a waiver of the provision for protest, notice, etc., contained in the old note, then that the

new note would in fact be no more than an extension of the original note; that it have judgment over against the defendants upon the original note. The case was tried to the court without a jury, resulting in a judgment in favor of the bank for the full amount prayed for, and further decreeing that the stock attached as collateral be sold and the proceeds applied to the judgment.

The first proposition urged is:

"When a pleader, or holder, of a note takes same in renewal of a former note and so alleges in his petition upon the renewal note, he cannot afterwards change his position and sue on the first note when the indorsers of the first note deny liability on the latter because the necessary notice was not given them of default."

This and subsequent propositions challenge the judgment upon the ground that the court erred in holding that the second note was not a novation and in rendering judgment upon the original note, which contained the stipulation providing for waiver of notice, protest, etc., in virtue of which the indorsers had been released because of the failure of the bank to give notice.

The evidence upon the issue of novation and the intent which should control in the execution of the second note is conflicting. W. D. Utts, the cashier of the appellee bank, testified that he succeeded McCoy as cashier. He further testified that McCoy used the form of note upon which the renewal was executed, but that when he went in as cashier he discarded that form and used the form with the waiver clause in it, and which is designated in the record as note No. 1. He said that when McCoy brought note No. 2 out to him it had not been filled out, though it had been signed by McCoy and indorsed by Darby and Harris; that McCoy paid up the interest to the date of the new note; that he wanted to leave the new note and take up the first note, but that the witness refused to surrender note No. 1 and told him that the bank no longer used the form of note No. 2. Darby and Harris were not present, but McCoy said:

"Well, the note will be taken care of anyway and can just be used for an extension—as an agreement of extension."

That the witness told McCoy the bank would not release the original note, and that he, as cashier, took the second note to show an agreement of extension of the first note, and that McCoy assured him that it would be all right with Harris and Darby to hold the second note as a contract for an extension, or an agreement for extension, of the first note. He further testified that there was no entry anywhere on the books of the bank or anywhere else showing that the first note had ever been canceled. That when note No. 2. was brought in by McCoy the face of the note had not been filled out, but that it

had Harris and Darby's signatures on the back; that it was not the custom when a note was renewed for the bank to retain the old one when the renewal note was given in lieu of the original, but when the new note was simply an extension the old note was retained. This witness further testified that when he ordered suit brought he turned over both notes to the bank's attorneys; that the plaintiff's original petition was not prepared under his instructions; that he never saw the original petition until the day of the trial. Harris and Darby both testified that when they indorsed the second note it was with the understanding between themselves and McCoy that the first note should be taken up and the second note substituted for it, and that they did not authorize McCoy to deposit the second note as merely an extension agreement of the original note. McCoy did not testify.

[1-3] A novation is the substitution of a new debt or obligation for an existing one, which thereby extinguishes the original. To constitute a novation by the substitution of a new obligation for a prior one between the same parties there must be the consent of both parties, and merely the obligor's intention that the existing debt shall be discharged by a new obligation is not sufficient. There must be a mutual agreement between them, and if it is not intended by both parties that the new agreement is to operate as a release of the original debt it is not a novation. Pierce-Fordyce Oil Co. v. Woods (Tex. Civ. App.) 180 S. W. 1181. There is no presumption of the extinguishment of the original note by the execution and delivery of a new note, but the burden of proving a novation is upon him who asserts it. Hill v. Texas Trust Co. (Tex. Civ. App.) 236 S. W. 767; Dies v. Wilson County Bank, 129 Tenn. 89, 165 S. W. 248, Ann. Cas. 1915A, 1090. It will not be presumed that a renewal note was taken as payment of the original note or as a novation; but when, as in this case, the original note is retained by the creditor it should be presumed, in the absence of evidence to the contrary, that the bank held it as a renewal or as collateral. Under such circumstances, the holder may sue upon either the renewal note or the original. A renewal note should never be considered as discharging the old one, in the absence of an express agreement when to do so would mean the loss of the debt. The mere change in the evidence of the indebtedness does not alone affect the right of the creditor. Rushing v. Citizens' National Bank (Tex. Civ. App.) 162 S. W. 460, and authorities cited; Jackson v. Home National Bank (Tex. Civ. App.) 185 S. W. 893; Johnson v. Amarillo Improvement Co., 88 Tex. 505, 31 S. W. 503; 3 R. C. L. 1217, 8 C. J. 569-571. The issue of novation in such case is a question of fact. First State Bank v. Cooper (Tex. Civ. App.) 179 S. W. 295.

[4-7] Ordinarily the cashier of the bank has no implied authority to accept a renewal note in payment of the original so as to release the parties on the latter. 3 R. C. L. 449. The evidence being conflicting upon the issues of novation and renewal we are bound by the court's judgment, holding in effect that the second note was simply an agreement to extend the time of payment of the original note. The waiver in the original note had the effect of fixing the liability of the indorsers, and upon default they were not entitled to notice nor was the bank required to sue in order to hold them. Central Bank & Trust Co. v. Hill (Tex. Civ. App.) 160 S. W. 1099; Archenhold Co. v. Smith (Tex. Civ. App.) 218 S. W. 808. In Honaker v. Jones, (Tex. Civ. App.) 115 S. W. 649; Id., 103 Tex. 239, 122 S. W. 529, 126 S. W. 4. It is held that a renewal agreement indorsed upon a note renews all the stipulations in it, including the agreement for attorney's fees, though the attorney's fees are not specifically mentioned in the renewal indorsement. The court having held that the second note in the instant case was simply a renewal of the original note the same rule obtains where the agreement for renewal is evidenced by a separate writing.

The appellants insist that they are released under the provisions of the Negotiable Instruments Law. Vernon's Ann. Civ. St. Supp. 1922, art. 6001—82 provides that:

·"Presentment for payment is dispensed with: * * * 3. By waiver of presentment, express or implied."

And it is further provided by section 110 of the act (article 6001—110):

"Where the waiver is embodied in the instrument itself it is binding upon all parties."

Section 120 of the act (article 6001—120) provides:

"A person secondarily liable on the instrument is discharged: * * * 6. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

[8, 9] Applying this article of the Negotiable Instruments Law to the facts of the case, we must conclude that the agreement for an extension was not binding, since no consideration was paid for it. The appellants as indorsers, had the right to pay off the original note and to enforce collection against McCoy. Moreover, according to the testimony of Utts, the rights of the bank against the indorsers was expressly reserved. Appellants insist, however, that since the arrangement between Utts and McCoy was without their knowledge and consent, and contrary to their understanding with the latter, they are not bound. This question, arising under section 120 of the Negotiable Instruments Law, has not been passed upon by the courts of this state in so far as we have been able to find; but it is held in Tennessee, by the Supreme Court of that state, construing section 120, that one secondarily liable upon a note is not discharged by the taking of a renewal note, although he is not notified of such renewal, where the extension is granted under the express reservation of all rights against him. Meredith v. Dibrell, 127 Tenn. 387, 155 S. W. 163, 46 L. R. A. (N. S.) 92, Ann. Cas. 1914B, 1079; Hunter v. Matt Stewart Co., 141 Tenn. 507, 213 S. W. 918. See, also, First National Bank v. Delone, 254 Pa. 409, 98 Atl. 1048; Farmers' & Drovers' Bank v. Bashor, 98 Kan. 729, 160 Pac. 208; 8 C. J. 448, 449.

· [10] We approve the holding in the cases last cited, because we think section 120 of the Negotiable Instruments Law clearly so provides. By its language appellants are discharged by an extension agreement "unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved." In the instant case we find both conditions. The note shows that the bank and McCoy had the assent of appellants to extend the time of payment. This stipulation is incorporated in the face of the note. In addition to this it must be implied, in support of the judgment, that the court found that the bank's rights against appellants were expressly reserved at the time of the execution of the extension note. The court filed no findings of fact, but the evidence is sufficient to sustain the judgment upon that theory. By force of section 63 of the Negotiable Instruments Law (article 6001—63) the appellants are indorsers, and this seems to be conceded by both sides in the trial. As such their rights must be governed by the provisions of the act quoted.

[11] Under several propositions the appellants contend that in suing upon the extension note the bank elected and that the first amended petition should have been stricken upon the ground that it set up a new cause of action. The evidence discloses that Utts, the cashier, delivered both notes to his attorneys with instructions to file suit. The mistake or oversight, if any, in filing suit upon the second note alone, is attributable to appellee's attorneys, and it became their duty, upon learning the facts, to amend their pleadings and sue upon the first note. The cause of action upon which the suit was based is the debt due the bank. At first it was evidenced by the original note; after the extension agreement it was then evidenced by both notes.

[12] Complaint is made under several propositions of the admission by the court of improper evidence. Where the trial is before the court and there are no findings of fact, we must presume that the court did not consider incompetent testimony where there is

admissible evidence sufficient to sustain the judgment.

[13] The appellants complain of the court's action in permitting Utts to detail the conversations he had with McCoy with reference to the second note. Evidence of this character is an exception to the hearsay rule and is admissible as res gestæ.

We find no reversible error, and the judgment is affirmed.