John W. MURCHISON, Jr. et ux., Appellants,

v.

CARUTH BUILDING SERVICE et al., Appellees.

No. 16180.

Court of Civil Appeals of Texas.

Dallas.

June 7, 1963.

Rehearing Denied June 28, 1963.

Bradford, Pritchard & Ashley, Dallas, for appellants.

Leslie Shults and John W. Price, Dallas, for appellees.

BATEMAN, Justice.

Appellants, husband and wife, entered into a written contract on or about April 11, 1961 with I. C. McElyea whereunder the latter agreed to construct a house on a lot owned by appellants and known as 518 Lois Lane, Richardson, Texas. The contract contained a mechanic's lien to secure payment of the contract price. Appellants brought this suit against McElyea and certain of his creditors, alleging that simultaneously with the execution of the contract it was also agreed between appellants and McElyea that the contract price of $25,500 would be paid in the following manner: $20,600 in cash (of which $18,000

would be borrowed by appellants from a life insurance company, secured by a first lien on the property) and the remaining $4,900 would be paid by transfer by appellants to McElyea of their equity in their former home at 417 Terrace Drive, Richardson, Texas. Appellants also alleged that simultaneously with the execution of the written contract they also executed their negotiable promissory note to McElyea in the amount of $25,500, payable on or before six months after date, which note McElyea simultaneously sold, assigned and conveyed to Preston State Bank, receiving from the bank $18,000.

Appellants also alleged that they paid McElyea $2,600 in cash, and that McElyea thus received all of the contract price except the equity in the property at 417 Terrace Drive, and that on or about July 10, 1961 he abandoned the contract, leaving the work unfinished which appellants paid $219.50 to complete.

Appellants asked the court to declare that appellees and McElyea had no valid claims or liens against the property at 518 Lois Lane, and that appellants be awarded $3,832.20 out of the proceeds of the sale of their property at 417 Terrace Drive, consisting of the following items of damages suffered by them by reason of McElyea's breach in abandoning the work and permitting appellees' liens to be filed against the property:

A. The cost of completing the contract, $219.50.

B. Payments on the existing mortgage, taxes and insurance on 417 Terrace Drive, which appellants say they would not have had to pay had McElyea completed his contract, totaling $752.35.

C. Excessive interest paid to Preston State Bank, over and above what they would have owed had McElyea completed his contract, $1,660.35.

D. A fee of $200 paid to an attorney to prevent foreclosure by Preston State Bank.

E. A fee for appellants' attorneys for clearing title to their property by this suit, or in the alternative a stakeholder's fee, $1,000.

The appellees are Caruth Building Service and Jones Brothers Cement Contractors, who allege they furnished to McElyea certain labor and materials going into the construction of the house. They filed in the office of the County Clerk of Dallas County certain affidavits and statements which they claim fixed mechanic's and materialmen's liens in their favor on appellants' property, even though it was their homestead, under the provisions of Art. 5460, Vernon's Ann. Tex.St.

At appellants' request a receiver was appointed who sold the property at 417 Terrace Drive, realizing for the equity and paying into the registry of the court the net sum of $3,842.26. All parties filed motions for summary judgment. That of appellants was sustained only to the extent of reimbursing them the $219.50 cost of completing the construction contract. The remainder of the fund, after payment of costs, was awarded pro rata to the appellees.

■ Considering first the appellants' claim to the fund, we note that they say in their brief that when McElyea abandoned the contract "he had substantially completed the erection of the house," and that it cost them only $219.50 to complete same. This we hold was the full measure of their damages for McElyea's breach of the contract. The other elements of their claim (mortgage payments, interest, taxes and attorney's fees) are special damages obviously not in contemplation of the contracting parties, and we think the court correctly refused to allow them to appellants. Evans v. Pacific National Fire Ins. Co., Tex.Civ. App., 367 S.W.2d 85; 17 Tex.Jur.2d 135.

■ The court having awarded to appellants all of the fund to which they were entitled, they have "no right to complain of the judgment so far as it disposes of the [remainder of the] fund between others." Ragsdale v. Groos, Tex.Civ.App., 51 S.W.

256, no wr. hist. Nevertheless, we shall consider the objections raised by appellants to the claims of appellees.

They first argue that appellees had no rights in the fund because they did not perfect valid liens on the property, in that (1) neither appellee notified Mrs. Murchison, or mentioned her as an owner in the affidavits filed, (2) appellants' $25,500 note had been negotiated to the Preston State Bank long prior to any notice of appellees' claims and prior to the filing of their affidavits, (3) neither appellee gave appellants written notice of each item of his claim, or copy of each bill of lumber as same was furnished, showing how much was due and unpaid on each bill of material furnished or labor performed, and (4) the lien statements were not sufficiently itemized.

We find no merit in the contention that appellees' mechanic's liens must fall because they did not notify appellant Mrs. Murchison, a co-owner, thereof. Under the record before us, we must presume that the new home was community property. Art. 4619, V.A.T.S.; Ellerd v. Randolph, Tex.Civ.App., 138 S.W. 1171, err. dis.; 23 Tex.Jur. 355, § 307. The husband being in law the manager of the community property, notice to him of the liens was also notice to the wife. Ellis v. City of San Antonio, Tex.Civ.App., 341 S.W.2d 508, err. ref. n. r. e.; Thompson v. Harmon, Tex.Civ.App., 152 S.W. 1161, 1165, reformed and affirmed Tex.Com.App., 207 S.W. 909; 23 Tex.Jur. 151, § 121.

In making the foregoing ruling we are not unmindful of the constitutional and statutory precautions by which our law so jealously safeguards the rights of a wife in her homestead. Ordinarily her husband cannot act for her in encumbering or disposing of the homestead; in both instances she must sign for herself and the officer taking her acknowledgment must examine her privily and apart from her husband, make certain she understands what she has signed and give her an opportunity to rescind it. Art. 16, § 50, Texas Constitution,

Vernon's Ann.St.; Art. 1300, V.A.T.S. But here it is apparent from appellants' own pleadings that a valid lien had already been placed on the homestead by the written contract between them and McElyea. Appellees were attempting to fix their liens under McElyea's lien, as authorized by Art. 5460, V.A.T.S.; Fullenwider v. Longmoor, 73 Tex. 480, 11 S.W. 500. We merely hold in this connection that their notices to "the owner," served on the husband, are sufficient to bind the wife, who has already given her consent to the general contractor's lien in accordance with law.

Appellants' next contention is that the filing by appellees of their liens did not impound any portion of the contract price in the hands of appellants because they had given McElyea their promissory note for the full amount, which McElyea had assigned to Preston State Bank. However it appears rather clearly from the record as a whole, and particularly the affidavit of appellant Murchison, that all the Bank paid McElyea on the note and all the Bank demanded of appellants thereon (exclusive of interest) was $18,000; that when Murchison was notified and the liens were filed the balance owing to McElyea was the equity in the former home at 417 Terrace Drive. This equity was converted to cash and the cash paid into the registry of the court as aforesaid, and the court correctly applied the doctrine of Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061, in holding that appellees were not entitled to liens on appellants' homestead, but only to the unpaid balance of the contract price which would otherwise be owing to McElyea, as if appellees had sued out writs of garnishment against appellants, subject of course to the right of appellants first to deduct the cost of completing the house.

The contention that appellees' liens were invalid because they did not notify appellants of each item of material as it was furnished is also without merit. The requirement to this effect contained in Art.

5465, V.A.T.S., has been held many times to be unenforceable where no prejudice or harm to the owner resulted from a failure to observe the same. Wood v. Amarillo Imp. Co., 88 Tex. 505, 31 S.W. 503, 506; Riter v. Houston Oil Refining & Mfg. Co., 19 Tex.Civ.App. 516, 48 S.W. 758, err. ref.; Padgitt v. Dallas Brick & Const. Co., Tex. Civ.App., 51 S.W. 529, err. ref.; Nichols v. Dixon, 99 Tex. 263, 89 S.W. 765; Ogburn Gravel Co. v. Watson Co., Tex.Civ.App., 190 S.W. 205, affirmed 110 Tex. 161, 217 S.W. 373.

■ Appellants also claim that the liens of appellees are invalid because not adequately itemized, citing Turner Roofing & Supply Co. v. United Pacific Ins. Co., Tex. Civ.App., 289 S.W.2d 407, and Lebo v. Dochen, Tex.Civ.App., 310 S.W.2d 715. It would serve no good purpose to lengthen this opinion by setting forth the claims involved; suffice it to say that we have carefully studied the claims and the applicable authorities and are of the opinion that sufficient detail was given to comply with the statute and to apprise the owners of what was being claimed and that appellants were in no way prejudiced by the claimed defects in itemization. This contention is also overruled.

■ Appellants also say that the court below erred in rendering judgment for appellees because they failed to make the contractor, McElyea, a party to their cross-actions. The transcript shows that both of the appellees sued McElyea for the amounts of their respective claims, but does not show that citations were issued thereon and the judgment specifically recites that these parties did not cause citation to be issued against McElyea. Appellants had made him a party defendant in their original petition and, while the transcript contains no citation, the judgment recites that he was served on a certain date in the suit of appellants against him. As this recitation is not challenged, we give it that verity to which it is entitled. 49 C.J.S. Judgments § 437, p. 869; Bass v. Hoagland (C.A.5)

172 F.2d 205, cert. den.; 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494.

The only basis on which appellants would have a right to complain of the failure of appellees to have McElyea served with citation on their cross-actions would be the possibility that they, the appellants, might later be called upon to pay the balance of the contract price to McElyea who might claim that the judgment in favor of appellees against him was not binding on him. The transcript contains no answer by McElyea and the judgment recites that he filed none. We overrule this contention of appellants, holding that the judgment is binding on McElyea. He was cited to appear and answer their suit, which was against him and the appellees and in which appellants set forth the claims of appellees of liens on the new home and prayed for judgment against all of them declaring that none of them had any right, title or interest in or liens upon the new home property and that their purported liens are invalid and of no effect, and further that plaintiffs be awarded $3,832.20 out of the proceeds of the sale of the other property, for costs "and such other and further relief to which they may be entitled." He was thus put on notice of the fact that appellees had filed affidavits to fix liens on the same property he had a lien on; also that appellants were claiming as an offset to his unpaid balance certain damages alleged to have been sustained because of his failure to pay appellees' claims. Rule 97(a), Vernon's Texas Rules of Civil Procedure, required him to assert as a counterclaim any claim he might have against appellants arising out of the transaction. He did not do so; therefore we hold that the judgment appealed from is *res judicata* as to any claim of McElyea for any part of the contract price, and that, accordingly, appellants' have no just cause for reversal in this respect.

We think the distribution made of the fund by the trial court was just and is amply supported by the pleadings and the evidence.

Affirmed.