## JACKSON v. HOME NAT. BANK OF BAIRD. (No. 559.)

(Court of Civil Appeals of Texas. El Paso. April 27, 1916.)

1. BILLS AND NOTES ⊂⇒430—PAYMENT ⊂⇒16 (1)—EXTINGUISHMENT OF NOTE OR DEBT BY PROMISSORY NOTE.

The giving of a promissory note for an antecedent debt or note will not extinguish the latter unless the parties so intend.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1251–1256; Dec. Dig. ⊂⇒ 430; Payment, Cent. Dig. § 63; Dec. Dig. ⊂⇒ 16(1).]

2. PRINCIPAL AND SURETY ⊂⇒159—NOTES— DISCHARGE BY RENEWAL — BURDEN OF PROOF.

In an action against the surety on a note, it was incumbent on the defendant to prove the defensive matter that it was agreed between his principal and the payee that a second note, executed by his principal, was given to and accepted by the payee in discharge of the original note.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. ⊂⇒ 159.]

3. BILLS AND NOTES ⊂⇒499—DISCHARGE BY RENEWAL—PRESUMPTION.

Where the principal maker of a note executed a renewal, but the original note was not delivered to him in exchange, there is a presumption that it was not the intention of the parties to discharge the original note by delivery to the payee of the new note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1682, 1695–1697; Dec. Dig. ⊂⇒499.]

4. PRINCIPAL AND SURETY ⊂⇒128(2)—SURETY ON NOTE—EXTENSIONS OF NOTE—DISCHARGE —CONSENT.

A surety on a note who agrees in the body of the note to extensions of time for payment, is not discharged by extensions without his consent.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 359–362; Dec. Dig. ⊂⇒ 128(2).]

5. PRINCIPAL AND SURETY ⊂⇒105(1)—SURETY ON NOTE — DISCHARGE BY EXTENSION— BINDING AGREEMENT—NECESSITY.

The mere giving of time to the principal maker of a note without a binding agreement to that effect which postpones the right of action or injures the surety will not discharge the latter.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 196, 201, 203–210; Dec. Dig. ⊂⇒105(1).]

6. APPEAL AND ERROR ⊂⇒1068(3, 5)—HARMLESS ERROR.

In an action on a note, where the trial court would have been justified in instructing a verdict for plaintiff, assignments urging errors in the charge and in refusing charges requested by defendant cannot present reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4227; Dec. Dig. ⊂⇒1068 (3, 5); Trial, Cent. Dig. §§ 475, 480, 525, 553.]

Appeal from Callahan County Court; W. R. Ely, Judge.

Suit by the Home National Bank of Baird against F. B. McGee and I. N. Jackson. From a judgment for plaintiff, defendant Jackson appeals. Judgment affirmed.

J. W. Moffett, of Abilene, and J. Rupert Jackson, of Baird, for appellant. F. S. Bell, of Baird, and A. H. Kirby, of Ft. Worth, for appellee.

HARPER, C. J. The Home National Bank of Baird brought this suit against F. B. McGee and I. N. Jackson on a promissory note, $261.08, interest and attorney's fees. Defendant McGee offered no defense. I. N. Jackson by answer admitted that he signed the note, and alleged that he signed as a surety; that the bank knew that he was surety when he signed it; that it was due five months after date; that after maturity of the note his codefendant, McGee, without his knowledge or consent, executed his personal note for the amount of the original note, with interest added, which was accepted by plaintiff; that by such acceptance he (Jackson) was released and discharged from liability; that at the maturity of the latter note, his codefendant, McGee, without his (Jackson's) knowledge or consent, executed and delivered to plaintiff another note for the full amount of the second note, principal and interest, which was accepted by plaintiff; and that he was thereby released and discharged from liability upon said first note. The bank, by supplemental answer, denied that the notes executed by McGee were accepted in settlement or discharge of the first joint note, and further plead that the defendant Jackson authorized plaintiff in writing, to wit, on the face of the note sued upon, to extend the said note without prejudice, etc.

The first assignment of error reads:

"The verdict of the jury is contrary to and against the weight of the undisputed testimony, in this: The testimony in this case shows that defendant F. B. McGee executed and delivered to plaintiff his note on October 11, 1912, to take up and renew and pay off and discharge the note sued on in this case; that T. E. Powell, cashier of plaintiff bank, received said note and told said defendant McGee that he, T. E. Powell, would ask defendant I. N. Jackson or some other person to sign the note as surety; that on the same day, or within two or three days thereafter, said defendant I. N. Jackson told both said T. E. Powell and Ford Driskill, cashier and assistant cashier of plaintiff bank, respectively, that he would not sign said note; that said plaintiff bank held said note until the maturity thereof, viz., October 11, 1913, at which time plaintiff bank notified defendant McGee to come in and pay or renew said note; that said defendant McGee, in response to said notice, came to Baird and executed a renewal note and delivered it to Ford Driskill, assistant cashier of said plaintiff bank, for plaintiff; that said Ford Driskill, assistant cashier of plaintiff bank, accepted said note, and then stamped said first renewal note 'Paid' or 'Renewed,' and delivered said first renewal note to said defendant F. B. McGee; that plaintiff and its said cashier and assistant cashier knew all the time that defendant I. N. Jackson was surety on said note sued on in this cause; and that said defendant I. N.

Jackson did not know of or consent to said renewals."

All the testimony upon the points raised by this assignment is as follows:

"$261.08.            Baird, Texas, May 11th, 1912.

"Five months after date, I, we, or either of us, promise to pay to the order of the Home National Bank, Baird, Texas, the sum of two hundred and sixty one and $8/100$ dollars, for value received, negotiable and payable without defalcation or discount at the office of the Home National Bank, Baird, Texas, with interest at the rate of 10 per cent. per annum from date until paid, and an additional amount of 10 per cent. upon principal and interest then due as attorney's fees, if sued upon or placed in the hands of an attorney for collection. The makers and indorsers hereof hereby severally waive protest, suit, demand, and notice of protest and nonpayment in case this note is not paid at maturity, and agree to all extensions and partial payments, before or after maturity without prejudice to the holder.                F. B. McGee.
                                 "I. N. Jackson.
"No. 515.  Due October 11th, 1912.  P. O. Clyde, R. F. D. 2."

F. B. McGee testified as follows:

"My name is F. B. McGee, one of the defendants in this suit, and principal maker of the note sued on in this suit, and I. N. Jackson is surety on the note. When said note became due I was not able to pay it, and plaintiff drew up another note, payable in one year, October 11, 1913, and I took the note to I. N. Jackson and requested him to sign it as surety for me, but Mr. Jackson refused to sign it, saying he was trying to get off of so much paper, or something of the kind. I then took the note back to the Home National Bank and told Mr. Powell, the cashier, that I could not get Mr. Jackson to sign the renewal note, and left it with Mr. Powell and told him he could get Mr. Jackson to sign it, as I had failed and did not feel like requesting him again. When this second note became due, I received a notice through the mail that the note was past due and to come in and pay it, or take care of it, and I came to Baird, and informed the assistant cashier, Ford Driskill, that I was not able to pay the note. Mr. Driskill drew up another note, payable in one year, October, 1914, which I signed and delivered to him, and he stamped the old note 'Renewal' or 'Renewed,' I am not sure which, and delivered it to me. I have lost or destroyed the note, as I made a search for it, and could not find it. I do not usually keep paper of that kind long, and I suppose I destroyed it. This note (referring to a note handed by counsel to him) is the note I last executed and delivered to Ford Driskill. It is for the sum of $329.83, dated October 11, 1913, and due one year after date. This note is for the principal and interest added. Both of the renewal notes, in fact, had the accumulated interest added in. After this suit was filed I requested plaintiff to give me the last renewal note, but plaintiff refused to deliver it to me."

On cross-examination:

"I have never paid this note sued on unless the renewals were payment, and I still owe the amount. I call the two last notes I signed renewal notes because when a note is renewed it is called a renewal note. I have never paid any of the notes, and I never requested the bank to deliver the note sued on to me. When I renewed the note I left it with Mr. Powell for Mr. Jackson's signature or some one else acceptable to him. I suppose the matter was in an unfinished state, because it was understood that Mr. Jackson was to sign the note or somebody that the bank would accept. Yes; whenever I pay a note I always call for it."

The defendant I. N. Jackson testified as follows:

"I am one of the defendants in this suit, and I was surety on the note sued on, which fact the plaintiff knew, and was known to plaintiff at the time I signed the note. About the date of the maturity of the note the defendant F. B. McGee requested me to sign, or shortly after, I told Mr. T. E. Powell, cashier, and Ford Driskill, assistant cashier, that I would not sign the renewal note, or any renewal note for McGee, and from that time until this day neither Powell, McGee, or any other person has asked me to sign a renewal note for McGee, although I have been in plaintiff bank and have seen Mr. Powell and Mr. Driskell at least a hundred times from October, 1912, to now. I had no knowledge of and did not consent to the renewal or renewals of the note sued in this cause."

Whilst this assignment suggests the proposition that the extension of the time of payment of the original note, without the knowledge and consent of the surety, operated as a discharge of him as surety, all of his propositions following the assignment urged that he is released and discharged from liability by reason of the fact that the renewal notes executed and accepted were given in full discharge of the original note.

[1] The rule is that the giving of a promissory note for an antecedent debt or note will not extinguish it unless such was the intention of the parties. Johnson v. Amarillo Imp. Co., 88 Tex. 505, 31 S. W. 503.

[2, 3] Being defensive matter, it was incumbent upon Jackson to prove that it was agreed between McGee and the bank that the note or notes called renewal notes were given and accepted in discharge of the original note. Of this there is no proof. Not a word of testimony from any witness that the bank agreed with McGee in consideration of the new notes to discharge the old, but, on the other hand, the facts show that the original joint note was not delivered to McGee, and this raises the presumption that it was not the intention of the parties to discharge the original joint note by delivery of the new note of the principal McGee.

[4, 5] Reverting back to the proposition that the extension of time without the consent of the surety, if the question is presented so as to require us to consider it, the surety agreed in the body of the original note to the extensions, and therefore cannot be heard to complain. Besides, it has long been settled in Texas that the mere giving of time to the principal of a note without a binding agreement to that effect which postpones the right of action or works some injury to the surety will not discharge him from his obligation. Frois v. Mayfield, 33 Tex. 803. There is no pleading or evidence here that any injury was suffered by the extension of time.

[6] As we view the facts above set out, there is no proof that the bank agreed to discharge the original note in consideration of the new, nor was there any such agreement as to extension of time of payment as would work a discharge of the surety; therefore the trial court would have been justified in instructing a verdict for appellee. It therefore follows that the other assignments urging errors in the charge of the court and in refusing charges requested by appellant could in no event present reversible error.

The assignments are therefore overruled, and cause affirmed.

WALTHALL, J. (concurring). I concur in the disposition made of this case. The trial court in the charge to the jury submitted but one issue, and that to the effect that, if the jury should find that the bank accepted either of the renewal or extension notes executed by McGee in payment of and in satisfaction of the note sued on, to find for the appellant. The jury found for the appellee on the issue, and the finding is amply supported by the evidence. I am of the opinion that the liability of the surety does not rest upon the question of injury resulting to him by reason of the extension of the date of payment. There is neither pleading nor evidence of injury, but a question of agreement, and thereby waiver. In Red River National Bank v. Bray et al., 105 Tex. 312, 148 S. W. 290, and Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, the Supreme Court held that, if the creditor enters into a valid and binding contract with the principal for an extension of the time of payment, promising to pay interest during the time extended, such contract will release a surety who does not consent to the extension. The question raised by the issue tendered is: Did the giving by McGee and acceptance by the bank of either or both of the extension notes, in the absence of an agreement that same should be in discharge and satisfaction of the note sued on, have the effect, as a matter of law, to discharge the surety? Under the above authorities the McGee extension notes would have the effect to release the surety, if the surety did not consent thereto. The holding in each of the cases referred to is made on the provision that the surety has not become a party to the transaction by consenting to the extension. Has he consented to an extension? In the note sued on is this provision:

"The makers and indorsers hereof severally waive protest, suit, demand and notice of protest and nonpayment in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity without prejudice to the holder."

This provision in the face of the note is an express agreement by the appellant to the extension of payment. It could have no other application or meaning. It is as much a part of the note as any other provision therein.

I believe that a proper result has been reached.