### COMMERCIAL NAT. BANK OF SAN ANTONIO v. POULOS et al. (No. 8011.)

Court of Civil Appeals of Texas. San Antonio. May 23, 1928.

Rehearing Denied June 27, 1928.

1. **Partnership** ⊜⟫242(7)—**Whether acceptance of new note of new partnership for note of old partnership released withdrawing partners held fact question for jury (Rev. St. 1925, art. 5924).**

Whether bank in accepting new note of new partnership for old note of former dissolved partnership and surrendering old note to makers, and having notice of names of undisclosed members of firm from records made under the Assumed Name Law (Rev. St. 1925, art. 5924), intended to release withdrawing partners from liability, *held* question of fact for jury.

2. **Novation** ⊜⟫12—**Novation is provable by circumstances.**

Novation can be proved by circumstances as any other fact.

3. **Novation** ⊜⟫1, 3—**"Novation" is substitution of new obligation, extinguishing old obligation, and extinction of old debt is consideration for new.**

"Novation" is the substitution of a new obligation for an old one, which is thereby extinguished and can never thereafter form basis of a claim; extinction of old debt being consideration for the new obligation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

4. **Novation** ⊜⟫4—**Taking new note from only part of original makers, or renewal of indebtedness and surrender of old notes, may constitute novation.**

Neither the taking of a new note for an old debt from only a part of original makers, nor renewal of debt between same parties and surrender of old notes for which new ones are substituted, standing alone, necessarily create a

novation, but such facts may be considered with other circumstances to establish novation.

**5. Novation ⬅⟹12—But slight circumstances are required to justify finding of novation by creditor, having notice of firm's dissolution, to accept liability of new in place of old firm.**

When the dissolution of an old firm occurs and a new firm agrees to assume liabilities of the old, but slight circumstances are required to justify a finding of novation on the part of the creditor of the old firm who has notice of the dissolution and agreement to accept the liability of the new instead of the old firm.

**6. Bills and notes ⬅⟹430—New note for debt evidenced by former note does not extinguish old note unless so intended.**

The giving of a new note for a debt evidenced by a former note will not extinguish the old note unless such be the intention of the parties to the new note.

**7. Novation ⬅⟹1—Each case of novation is decided on its facts.**

Each case of novation must stand or fall on its own facts.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by Charles D. Tassos against Mike Callins, John E. Poulos, and others, for dissolution of partnership and appointment of receiver, in which the Commercial National Bank of San Antonio and others intervened. From the judgment named intervener appeals. Affirmed.

Cunningham, Moursund & Johnson, of San Antonio, for appellant.

Hertzberg & Kercheville, W. M. Groce, and Lewright & Lewright, all of San Antonio, for appellees.

FLY, C. J. This suit was instituted by Charles D. Tassos against Mike Callins, James Lotos, John E. Poulos, and Chris Nakes, who were alleged to be partners of Tassos in a restaurant or cafeteria known as the Blackstone Cafeteria, or Blackstone Café, in San Antonio, seeking a dissolution of the partnership and the appointment of a receiver with power to manage, control, and conduct the business, to sell the same, to collect the assets and moneys arising from the sale, and, after paying off the costs and expenses of this action and receiver's costs and expenses, to pay off the partnership debts, dividing the proceeds of sale remaining between the parties thereto, in accordance with their respective rights. There was a number of interventions made in the case, their pleadings which were not considered material on this appeal being omitted, as appellant was the only intervener complaining and appealing. In its amended intervention plea, the Commercial National Bank of San Antonio complained of the original plaintiff, Charles D. Tassos, and of the original defendants, Mike Callins, James Lotos, Chris Nakes and John Poulos, as well as of George Callins, individually, and as partners and also F. A. Talmadge, who had been appointed receiver. Intervener made itself a party plaintiff in the cause and sought a recovery on a certain promissory note for $3,250, which was executed on December 12, 1925, and signed by Blackstone Café, by James Lotos, C. D. Tassos, Mike Callins, James Lotos, and Chris Nakes, by C. D. Tassos. Appellant also sought foreclosure of a chattel mortgage on certain personal property.

The cause was submitted to a jury upon two special issues, and judgment was rendered in favor of different interveners against the receiver, and in favor of appellant as against Mike Callins alone for $4,247. The suit was dismissed by appellant as to foreclosure of the lien, and as against the receiver, and against Charles Tassos and James Lotos, who had been declared bankrupt, and as against Chris Nakes, who resided in California and had not been served. The remaining defendants were John E. Poulos, George Callins, and Mike Callins, the last named filing no answer. John E. Poulos and George Callins claimed that they were not partners at the time the last and other notes were executed.

The special issues are as follows:

"Question No. 1. In the agreement accepting the note dated December 12, 1925, for $3,-250, did the Commercial National Bank, acting through Z. D. Bonner and Charles D. Tassos, intend to release John E. Poulos from his liability on the debt evidenced by the prior notes executed by the Blackstone Cafeteria in favor of said bank?"

That question was answered: "Yes."

"Question No. 2. In the agreement accepting any of the notes executed after the 3d day of January, 1925, did the Commercial National Bank, acting through Z. D. Bonner, and Charles D. Tassos, intend to release George Callins from his liability on the debt evidenced by the prior note for $5,000 executed on the 15th day of November, 1924, in favor of said bank?"

The answer was: "Yes."

[1] The note for $3,250, upon which appellant sought a recovery, was given for the balance due on a note given for $5,000, dated November 15, 1924. At the time the debt was first incurred John Poulos was a member of the copartnership doing business under the name of Blackstone Cafeteria. George Callins withdrew from the partnership and severed his connection with the business. John Poulos had never signed any of the notes given by the partnership to appellant. The restaurant for a long while was known as the Blackstone Cafeteria, where the patrons waited upon themselves, but in the fall of

1925, the house in which the cafeteria was being conducted was remodeled so as to prepare it to be operated as a regular restaurant with waiters to serve the food to patrons. A new firm was organized and was known as the Blackstone Café. Poulos and Callins were not members of the new firm, which was shown by the records required to be made showing the undisclosed names of those belonging to the firm, as provided in article 5924, Revised Statutes of 1925, which went into effect on September 1, 1925, before the old partnership was dissolved and the new organized. This is referred to because, prior to the Revised Statutes of 1925, the law not only required that a partner withdrawing from a firm or disposing of his interest shall file with the county clerk a document setting forth such fact, but it was further provided that until the withdrawing member files the certificate required he should remain liable for the debts incurred in the operation of the business. The penalty is omitted from article 5925 of the Revised Statutes of 1925. No mention was made of Poulos at the time the note was given; he had not asked for more time on the note. That was done by the new partnership, of which Bonner was constructively, if not expressly, given notice. The circumstances clearly indicated that appellant did not intend that Poulos should be bound on the new note. The records notified appellant that Poulos and Callins had withdrawn from the old firm and were in no manner connected with the new firm. What the intention of the parties was as binding Poulos was a question of fact to be submitted to a jury, as was done by the trial court.

[2-4] We do not think it open to argument that a novation can be proved by circumstances as any other fact, and while there has been some confusion created by inaccurate language used in some decisions, still there are cases holding directly that a novation can be proved by circumstances. The facts in this case prove a novation which is the substitution of a new obligation for an old one, and which extinguishes the old debt. In every novation the old debt is absolutely destroyed by the new, and the old debt could never, therefore, form the basis of a claim. The extinction of the old debt was the consideration for the new. We recognize the established rule that the taking of a new note for an old debt from only a part of the original makers does not necessarily constitute a novation, nor does a renewal of a debt between the same parties and the surrender of the old notes for which the new are substituted of itself necessarily create a novation, yet such actions may be considered with other facts and circumstances, and may constitute sufficient proof to establish a novation. Meador v. Rudolph (Tex. Civ. App.) 218 S. W. 520; Gin Co. v. Waxahachie Nat. Bank (Tex. Civ. App.) 271 S. W. 290; Strange v. Cooper Grocery Co. (Tex. Civ. App.) 4 S. W.

(2d) 232; Frost v. First State Bank & Trust Co. (Tex. Com. App.) 276 S. W. 222.

The note sued on was given by a firm to which Poulos had never belonged, and appellant was charged with knowledge of that fact, and the note could not have been given with any view to bind Poulos. The old notes were all surrendered to the makers, indicating that they were canceled and extinguished. If the bank intended to hold the makers on the old notes it would not be reasonable to conclude that the notes would have been placed in the hands of the makers. As said in Ruling Case Law, vol. 20, § 5, p. 364:

"And in the absence of proof of a special agreement, the giving up or the retention of the original security will, in general, be a decisive circumstance in determining that question, for if the creditor means in any contingency, to resort to the original indebtedness, he will scarcely be willing to surrender all evidence of that indebtedness to his debtor without fortifying himself with some acknowledgment of the real nature of the transaction."

The intent of the parties in making the new note can be shown, as hereinbefore stated, by circumstances.

[5] As said in R. C. L. vol. 20, § 16, p. 373:

"When the dissolution of an old firm occurs and a new firm agrees to assume the liabilities of the old, but slight circumstances are required to justify a finding of an intention on the part of a creditor of the old firm, who has notice of the dissolution and agreement, to accept the liability of the new instead of the old firm."

There can be no doubt that the old debt was extinguished by the surrender of the old notes and the acceptance of a new note with at least one new party to it, and, coupled with the circumstances showing that the bank entered into the new contract with full knowledge of the dissolution of the old partnership and the creation of a new partnership to which at least two of the old partners were not attached, form circumstances justifying a finding by the jury that appellant knew that Poulos and Callins were not partners in the new concern and that the intent was to relieve them from liability. Meador v. Rudolph, herein cited.

[6] We recognize the Texas rule to be that the giving of a new note for a debt evidenced by a former note will not extinguish the old note unless such be the intention of the parties to the new note. Johnson v. Amarillo Imp. Co., 88 Tex. 505, 31 S. W. 503. Such intention can be shown by circumstances, and we think it follows from the holding in Jackson v. Home Nat. Bank (Tex. Civ. App.) 185 S. W. 893, that the retention by the creditor of the old note when taking the new raised the presumption that it was not the intention to discharge the old debt, and, with equal reason, that the giving of the old note to the creditor would raise the presumption that the old debt was discharged. This fact, with

the fact that appellant, while requiring the signatures of the other partners to the notes given by the partnership, had never demanded the signature of Poulos, might tend to show that appellant was satisfied at all times with notes without the signature of Poulos and had given no importance to such signature. On September 21, 1925, Chas. D. Tassos, Mike Callins, James Lotos, and Chris Nakes filed in the office of the county clerk of Bexar county an instrument duly acknowledged, in which it is stated that they were doing business at 225 East Houston street, San Antonio, Bexar county, Tex., under the name of Blackstone Cafeteria, "and that none other than those whose names appear above have any interest whatsoever in said business." Poulos swore that he had before the execution of the note sued on notified Bonner, vice president of the bank, that he had sold his interest in the cafeteria. The old note was given to Tassos when he delivered the new note to the bank. After Poulos sold out, Tassos, who was the agent of the café, went to the bank and changed the account from the Blackstone Cafeteria to the Blackstone Café. Tassos swore:

"I told Mr. Bonner that we had bought Mr. Poulos' interest and that we were changing the name of the Blackstone Cafeteria and that we wanted to give a new note in the name of the Blackstone Café, and that is the note sued on at this time."

Poulos had nothing to do with the business after he sold his interest, but was in Florida when he sold his interest and was there when the business was put in the hands of a receiver. The cash $300 and the note for $700 which were to pay for Poulos' interest were placed in escrow and held by appellant bank until Poulos returned the bill of sale from Florida. When the bill of sale was sent by Poulos the cash and note were released to Poulos by the bank.

[7] The facts in this case clearly distinguish it from State Bank v. Davidson, 260 S. W. 922, decided by this court, as well as other cases cited by appellant. The principles of law enunciated in the Davidson Case and others are the same announced in this opinion, but the facts are different. The question in this case as to a novation and the release of Callins and Poulos were submitted to a jury, and we think the facts justified their verdict. Each case of novation must stand or fall upon its own facts, and this doctrine is proclaimed in all cases on novation. Of course, in taking new notes there must be agreements to release those who have retired from a partnership, but the agreement can be proved, not only by an express agreement of release from liability, but can and may be proved by circumstances surrounding the transaction.

Appellant places strong reliance upon the case of Reclamation Co. v. Simmons (Tex. Civ. App.) 293 S. W. 194, and claims that the facts in that case are very similar to the facts in this case. We think, however, they may be distinguished. In that case there was a partnership which incurred an account to the appellant. The firm consisted of Simmons, Hoffman, and Page. The firm was dissolved when the last two named withdrew, leaving Simmons to settle the liabilities out of the assets of the firm, which was known as the Western Brokerage & Supply Company. Simmons sought to obtain an extension of time of payment of the account of the firm, and in order to obtain such extension executed a promissory note to the Reclamation Company in the name of the Western Brokerage & Supply Company, which was sued on by its holder. Hoffman and Page answered that the note given by Simmons was a novation and did not bind them because they had withdrawn from the partnership and the account was barred by two years' limitation. The trial court held with them. The appellate court held:

"This case must therefore turn on the proposition of whether the original obligation on an open account was paid or novated by the execution and delivery of the notes under the circumstances shown."

Page swore that the note was given only to obtain an extension, and there was no contradiction of that statement. Page had the authority to settle up the indebtedness of the firm out of its assets, which seem to have been inadequate for that purpose. Hoffman and Page did not deny their liability on the account. The action of Simmons in executing the note seems to have been an honest effort to settle a debt he had been authorized to settle. The court held there was no novation and that all the members of the firm were bound by the note. The account was not canceled nor credited with payment by the note. The court held that the evidence did not show "payment or novation, express or by implication," recognizing the principle that novation might be shown by express agreement or by implication from the circumstances. The facts of the case easily distinguish it from this case. The first, second, and third propositions are overruled.

It would be remarkable if, as contended by appellant, it should have made no effort to have obtained the signature of Poulos to the notes executed, after a new firm had been formed and after he had retired from the old firm and had no connection therewith, appellant still relied on Poulos as the responsible member of the firm. Appellant knew a new firm had been organized from the record of the members of it under the Assumed Name Law; knew from being directly told by Tassos that Poulos had retired from the business and that the new firm had assumed all the indebtedness, and still made no inquiry about Poulos, who had left the state of Texas. It is improbable that Bonner con-

templated endeavoring to hold Poulos on the note until the new firm had failed to meet its payment. It was shown positively by Tassos that Poulos sold his interest, and the new firm assumed the debts of the old firm early in September, 1925, and radically changed the mode of serving customers and adopted the name of Blackstone Café to meet the change in methods of service. The accounts in the bank were changed from Blackstone Cafeteria to Blackstone Café, and Tassos told Bonner, the vice president, about the changes in name and personnel of the firm. Men who conduct successful banks, such as appellant is known to be, are not so reticent as to claiming the rights due them, and do not neglect any opportunity to press their lawful claims.

What has been said as to Poulos applies with equal force to George Callins. He was not a partner in the restaurant when the original debt was made, but the partnership at that time was indebted to the bank. He left the firm on January 3, 1925. Lotos to whom Callins sold his interest in the firm became liable for his part of any debts due the bank. Callins was undoubtedly released by the acts of the bank from any liability on the note. The bank knew he had left the firm, and by all its acts accepted the situation and released Callins from liability. The jury was justified in their answer to the second question.

The judgment will be affirmed.