436 So.2d 224 (1983)
O.K. HOUSTOUN, Jr., and Gail B. Baldwin, Appellants,
v.
Gordon M. ALBURY, Jr., et al., Appellees.
Nos. 81-1694, 81-1711.
District Court of Appeal of Florida, Third District.
June 28, 1983.
Rehearing Denied September 6, 1983.
*225 Robert M. Brake, Coral Gables, Don R. Livingstone, South Miami, for appellants.
Flaxman & Flaxman and Neil Flaxman, Coral Gables, for appellees.
Before HENDRY, BARKDULL and BASKIN, JJ.
HENDRY, Judge.
Appellants bring these consolidated appeals from the final judgment of accounting dissolving the partnership of Houstoun, Albury and Baldwin. In a prior appeal[1] this court affirmed the trial court's determination that three partnerships had existed[2] and remanded the cause for a full and final accounting. The trial court, on remand, found that the June 30, 1968 accounting statement, as amended by the court's own findings, constituted an accurate statement of the affairs of the partnership. The court further found that the accounting statement credited the condominium office building, retained by Houstoun, to Houstoun's account at its book value as of June 30, 1968. Additionally, the court determined that after the remaining assets were liquidated, the partnership owed Houstoun the sum of $41,275.29, Albury owed the partnership the sum of $7,181.48 and Baldwin owed the partnership the sum of $31,836.09.
The partnerships were formed for the purpose of performing architectural services. During the first Houstoun-Albury partnership, in 1964, the partnership received 1,000 shares of Lum's stock in lieu of payment for such services. Houstoun owned two-thirds and Albury one-third of the stock. In 1967, the Lum's stock was pledged as security for a bank loan in the amount of $26,000. The note evidencing the debt was signed by Houstoun, and the monies were deposited into the Houstoun-Albury-Baldwin partnership account. Proceeds from the loan were used for partnership purposes and to acquire stock in a corporation known as "Happy Six". The Happy Six stock was titled only to Baldwin. As of June 30, 1968, when the partnership was dissolved, Houstoun had sold his shares of the Lum's stock to reduce the bank debt, and Albury had demanded the return of his shares. The stock had split 3 to 1 and 1,000 shares were still held by the bank as security. In October, 1968 the parties signed a tentative dissolution agreement listing all the remaining assets.
On March 26, 1969 Houstoun renewed the loan and borrowed an additional $13,500. The old note had been marked "paid by renewal". The bank retained the Lum's stock as security for this new loan. Albury was not aware that the stock was being held by the bank as security for this new *226 loan. The value of the stock on March 26, 1969 was $77,250. Subsequently, when the loan was not paid, the bank sold the stock for $22,297.79, its value as of October, 1970. The trial court determined that the old note had been paid as of March 26, 1969 and ordered that Albury should recover the sum of $77,250 minus his debt to the partnership of $7,181.48, or a total of $70,068.52, from Houstoun. In addition, the court ordered that Houstoun should recover the sum of $31,836.09 from Baldwin.
On appeal, Houstoun complains that the trial court erred in its interpretation of the loan agreement itself and in its valuation of the Lum's stock. He contends that the loan was a renewal of the original partnership loan and was not paid as of March 26, 1969, and the bank would not have released the Lum's stock at that time. Houstoun urges that the loan was paid in October, 1970 when the Lum's stock was sold.
Whether a renewal note discharges the original obligation is dependent upon the intentions of the parties. There is a presumption that a renewal note discharges the original obligation in the absence of facts manifesting a contrary intent. Commercial National Bank of San Antonio v. Poulos, 8 S.W.2d 222 (Tex.Civ.App. 1928); see Card v. Commercial Bank at Daytona Beach, 119 So.2d 404 (Fla. 1st DCA 1960). The intention of the parties is a question of fact requiring an examination of the circumstances surrounding the transaction. 11 Am.Jur.2d, Bills and Notes, § 916 at 961; Annot. 43 A.L.R.3d 246 (1972); Annot. 52 A.L.R. 1416 (1928). Such findings of fact by the trial court carry a presumption of correctness absent a showing of an abuse of discretion. Cohen v. Lansburgh, 366 So.2d 154 (Fla. 3d DCA 1979); Martin v. Flanigan, 188 So.2d 5 (Fla. 3d DCA 1966).
Sub judice, even though a bank officer testified that the obligation to the partnership was not discharged until 1971 when the entire debt was repaid, and that the March 1969 note was just a renewal of the original 1967 loan, we are not convinced that the loan had been so extended and was not a novation of the original debt. The 1969 loan, evidenced by the note, demanded a greater interest rate, and added $13,500 to the indebtedness. The loan was made to the partnership's account, but required only Houstoun to sign the obligation. More importantly, the partnership was dissolved as of June 30, 1968. A partner not affiliated with the firm is not responsible for its obligations made after his departure. See Commercial National Bank of San Antonio v. Poulos, supra; section 620.735, Florida Statutes (Supp. 1972).
The dissolution of a partnership liquidates all assets into cash; pays off the debts of the partnership, first to third persons, second to advances made by the partners, third to repayment of capital; and then divides the profits. Wiese v. Wiese, 107 So.2d 208 (Fla. 2d DCA 1958). Distribution in kind can be made to a partner after the value of the asset is taken into account in the final accounting, pursuant to the above procedure. Ellison v. Goldstein, 154 So.2d 202 (Fla. 3d DCA 1963); Obel v. Henshaw, 130 So.2d 892 (Fla. 3d DCA 1961); Wiese v. Wiese, supra; 68 C.J.S., Partnership, § 384; see section 620.755, Florida Statutes (Supp. 1972).
In this case the partnership debts were substantial, but appellant Houstoun failed to wind up the partnership and separate its accounting from the continuation of his own business. The date the loan became due, March 26, 1969, the Lum's stock was worth $77,250, an amount far greater than the $26,000 outstanding loan. If there had been a true winding up of the partnership, this asset and debt should have been finally settled at this point in time.
In our view, once the trial court undertook this equitable accounting, the court properly balanced the equities, adjusted the accounts of the parties and rendered complete justice between them. See and compare: Martin v. Flanigan, 188 So.2d 5 (Fla. 3d DCA 1966); F.A. Chastain Construction, Inc. v. Pratt, 146 So.2d 910 (Fla. 3d DCA 1962). There being sufficient evidence in the record to justify the trial court's findings, and no material or substantial *227 error having been demonstrated, the decree of accounting will not be disturbed. Empire Drug Co. v. Smith, 78 Fla. 594, 83 So. 458 (1919); Johns v. Seeley, 94 Fla. 851, 114 So. 452 (1927); City of Miami v. Carter, 105 So.2d 5 (Fla. 1958); Ellison v. Goldstein, supra.
We have considered the additional points raised on appeal and cross-appeal and after a careful review of the record, briefs, and applicable law, find them to have no merit. Accordingly, the final judgment of accounting is affirmed.
Affirmed.
NOTES
[1] Houstoun v. Albury, 339 So.2d 220 (Fla. 3d DCA 1976).
[2] From September, 1962 to January 1, 1965 between Houstoun (2/3) and Albury (1/3); from January 1, 1965 to June 30, 1968 between Albury (28%), Houstoun (51%) and Baldwin (21%); from July 1, 1968 to September, 1968 between Houstoun and Albury. Id.