H. C. JOHNS ET AL., *Appellants*, v. GUY B. SEELEY, *Appellee*.

Opinion Filed November 1, 1927.

*Chas. P. Dickinson,* for Appellants;

*Newell & Boyer,* for Appellee.

ADAMS, Circuit Judge:

It appears from the record in this cause that Guy B. Seeley contracted to purchase from H. C. Johns a parcel of real estate situated in Orlando, Florida. The written purchase contract contained the terms and stipulations agreed to between them. Approximately five months thereafter Seeley contracted with Casey Driver and wife to sell the property to them. Driver, by the terms of the contract was to pay Seeley $5,500.00 for the land. He was to assume a $2,200.00 mortgage then on the land, and was

to pay Seeley $1,000.00 at the execution of the contract, and was to pay Johns the sum of $1,400.00 due on the purchase contract between himself and Seeley, and was to pay the balance on the purchase price to Seeley in installments as provided in the contract. It was further stipulated in the agreement that when all the payments were made as provided in the purchase contract between Seeley and Driver, that Johns was then to make conveyance of the land to Driver.

The conclusion is reached from the record that Driver paid Johns the balance due him as provided in the contract but did not pay Seeley the balance due him, and that Johns having been paid, neither he nor Driver regarded Seeley any further, and a deed was made from Johns to Driver, although Driver had not complied with his contract with Seeley which provided that Johns should make a deed to Driver ''when the payments mentioned—have been made.'' The payments mentioned in the contract included those which Driver was to make to Seeley as well as the payment to Johns. By ignoring Seeley's claim and right under the contract Driver procured a deed to the property for much less than he had agreed to pay Seeley for it.

Not long after the Drivers procured the deed they mortgaged the land to D. B. Briggs for a loan of $3,200.00. The bill alleges this mortgage was executed on April 4th, 1922, and duly recorded.

In January, 1923, the Drivers executed a deed to the land to R. C. Woodberry & Company. This deed was duly recorded. It appears that Driver had been a former employee of this company and that this deed was executed to settle certain financial differences between himself and the company. In February, 1923, the above company a corporation, deeded the land to Clay Binion. This deed was

duly recorded. It appears from the record that R. C. Woodberry, president of the above company, and Binion were brothers-in-law.

On March 23rd, 1923, Seeley filed his bill against H. C. Johns and wife, Emma Driver and her husband, Casey Driver, Delos D. Briggs, R. C. Woodberry & Company, and Clay Binion and wife, naming them all. Process issued to all of them. Decree *pro confesso* was duly taken and entered against Johns and wife and Mrs. Driver and her husband, Casey Driver. The remaining defendants appeared, demurred and answered in due course of pleading. A special master was duly appointed and the testimony taken, and the report and findings of the master reported to the court. The court approved the master's findings and entered a decree for Seeley, complainant, for the sum of $847.00 and interest from a named date.

Seven assignments of error are presented. The first two assignments relating to rulings on demurrers to the bill are without merit. The five remaining assignments will be considered together as each relates to alleged error by the chancellor in rendering his final decree.

It is contended Seeley was not entitled to the decree because he did not hold legal title to the land in question, and therefore could not assert a vendors lien thereon. Johns held the legal title, and that he could have asserted his lien for unpaid purchase money is without dispute.

"A vendor's lien is a right which the law by implication accords to the grantor of land, who has conveyed title, and reserved no express lien, and has taken no security for the purchase money other than the personal obligation of the grantee, to subject the land in equity to the payment of the unpaid purchase money. DeLong v. Marshal, et al., 63 So. 723 (Fla). Bowen, et al., v. Grace, 59 So. 563, (Fla) ; McKinnon v. Johnson, 45 So. 451, (Fla).

The above is unquestionably the law as to the original grantor. But is a purchaser who contracts to purchase land from the owner of the legal title, on given terms and at a given price, and then sells the land to a second purchaser for a figure that would produce a profit to him over the price he was to pay the original owner, without remedy for the purchase money due him, when full provision is made in the contract with the second purchaser to pay the balance due on the first purchase price to the original owner, and that balance is actually paid, and then the first purchaser ignored as to the amount due him. The law does not sustain such view as we see it. Seeley did not have legal title to the land but he had an equitable estate or interest therein, because in his contract for its purchase from Johns he paid Johns $1,250.00 when the contract was made, and also assumed a mortgage for $2,-200.00, and later paid Johns $150.00 more, thereby acquiring an equitable interest at least to the extent of $1,400.00 in cash paid. Driver agreed to pay Johns the $1,400.00 balance Seeley owed him and agreed to assume the $2,-200.00 mortgage, and further agreed to pay Seeley direct other payments, which last he did not do. Can Johns and Driver, by ignoring Seeley's contract with Driver, defeat Seeley's right to lien for the unpaid purchase money due him from Driver? Good authority holds to the contrary.

"The vendor of an equitable estate or interest in realty has a lien for upaid purchase money, whenever under the circumstances the vendor of a legal estate or interest therein would have a lien." 39 Cyc. 1805, Logwood v. Robertson, 61 Ala. 523; Anderson v. Spencer, 51 Miss. 869; Russell v. Watt, 41 Miss. 602.

Again in 29th American & English Ency. of Law at page 733, it is said that:

"That the lien may be enforced in favor of one not the

grantor. Thus, when one has purchased without taking a deed, and has subsequently sold to a third party, and had the land conveyed by the original owner according to his direction to the sub-vendee, the lien attaches in favor of the vendor although he is not the grantor, and the legal title did not rest in him, but he owned and controlled it, and having the equitable title, the legal outstanding in another, on his selling the same and causing the holder of the legal title to make conveyance to the other person equity will regard the substance rather than the form, and the lien arises in favor of the unpaid purchase money for the land conveyed.''

Under the circumstances of this case as disclosed by the record we do not think there is any question but that Seeley was entitled to his lien for the unpaid purchase money due him from Driver.

Another contention of appellant is, that Seeley was not entitled to a decree because appellants had no notice either actual or constructive of his claim. The record shows that Seeley's contract with Johns was duly recorded, and that this fact also appeared in the abstract. In addition, when Driver was about to deed the property to Woodberry & Company, Mrs. Driver and her brother-in-law, W. D. Driver, advised them that there was about $800.00 still against the land on their contract with Seeley. The attorney for the Company said that would come up later, and proceeded in the face of this information to conclude the execution of the deed from the Drivers to his client Woodberry & Company. About a month thereafter Woodberry & Company deeded the land to Clay Binion and wife. R. C. Woodberry of the above Company was a brother-in-law of Binion, and he undoubtedly knew, because of knowledge obtained from the abstract and statements by the Drivers of this outstanding encumbrance, or at least knew

enough to put him on his guard and investigation, and there is hardly any question but that Binion knew it also. But granting that Binion did not have knowledge of the Seeley lien, can he be heard to complain? He did not testify in the cause, and neither did R. C. Woodberry or any one connected with the aforementioned company. Nothing was offered for defendants, except the filing of the two deeds, and the testimony of Mr. Dickinson, attorney for appellants, and R. A. McTyer, father-in-law of Woodberry and Binion. There is conflict on a material point in the testimony of Dickinson and McTyer, and considered in its entirety their testimony is far from convincing. Woodberry and Binion chose to sit silent and risk establishing that they were *bona fide* purchasers for a valuable consideration without notice of the Seeley lien, by the testimony of Dickinson and McTyer. The testimony of these gentlemen signally fails to establish the desired fact.

"Parties claiming to be *bona fide* purchasers for value without notice of a vendors lien for unpaid purchase money must affirmatively show that they not only purchased their interest for value, but that they actually paid value therefor, before notice of the lien." Fossett v. Turk, 54 So. 695, (Ala.); Buford v. McCormick, 57 Ala. 428; Masterson v. Pullen, 62 Ala. 145.

As we see it Mr. Briggs, the mortgagee admits he had knowledge of the Seeley contract, for in his answer he admits having such knowledge from the record of the contract in the public records. It is also passing strange that he would loan the Drivers the large sum of $3,200.00 taking as his security for payment a mortgage on this land, and make no investigation as to the soundness of title, or encumbrances that might be thereon, and which would affect the substance of the security for his money· Mr. Briggs also chose to leave the court to figure it out for it-

self as he did not testify and submit himself to examination so that the court might be assisted. in arriving at a conclusion as to his status. The state of the record leads to the conclusion that he knew of the Seeley contract at the time of the execution of the mortgage to him by the Drivers.

The testimony in this cause was taken and reported by a special master. His report and findings were reviewed by the chancellor whose ability is fully recognized by the legal profession. The decision of the chancellor was in keeping with equity and justice, and therefore should not be disturbed.

"While under certain circumstances the findings of a chancellor may not have the same weight and conclusiveness as a verdict of a jury, yet they should not be disturbed on appeal unless clearly erroneous." Mock v. Thompson, 58 Fla. 477.

"Upon an accounting in a case where a master has taken and reported the evidence, and the chancellor has reviewed the evidence and made a finding as to the amount due by one of the parties to the other and renders a decree for such sum, and there is sufficient evidence in the record to justify such finding, the conclusions of the chancellor as to the amount will not be reversed. Empire Drug Co. v. Smith 78 Fla. 594.

The decree is affirmed.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the decree of the Circuit Court in this cause be, and the same is hereby, affirmed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM, BROWN AND BUFORD, J. J., concur.