A. S. JOHNSON v. TOWN OF ANTHONY, *et al.*

156 So. 732.

Opinion Filed June 11, 1934.

Petition for Rehearing Denied October 23, 1934.

*Charles A. Savage, Jr.* for Appellant;

*W. E. Smith,* for Appellees.

BUFORD, J.—The appeal here is from final decree dismissing bill of complaint filed by citizens and taxpayers to vacate a judgment law and to enjoin the discharge of the judgment by the assignment to the judgment-creditor certain tax sale certificates.

The judgment was sought to be vacated on the ground that it was obtained by and through fraud and collusion.

The law action was based on a claim for money had and received by the municipality by way of a loan and used by the town for street improvement. The amount of the loan was evidenced by certain notes which had been made and executed by the President of the Town Council and attested by the Town Clerk pursuant to authorization thereunto by

the Town Council at a special meeting at which all members were shown by the minutes of the Council to have been present.

The learned Chancellor in the final decree said:

"The theory for the relief sought is that this judgment was obtained by fraud and collusion, and the borrowing of the money from Sims and giving the notes was an *ultra vires* act on the part of the town. That it was *ultra vires* may well be conceded; and it appears that Lawton C. Sims, administrator, abandoned a recovery of a judgment on the notes, but as the town did actually receive and use this money to build the highway, that in equity and good conscience the town should return the same.

"It has been further suggested that it was not a loan but a donation. It is true that some of the citizens did *donate* some work on the road, but as far as this question goes that E. C. Sims intended to donate the money he advanced there is no sufficient justification found in the evidence for the statement. It was not a donation, so we must determine whether or not the loan was procured by fraud. The fraudulent acts alleged are that when suit was commenced that resulted in obtaining this judgment for money had and received by the town, that certain taxpayers and citizens of the town undertook and did employ counsel (Mr. D. Neil Ferguson) to defend same, who interposed a demurrer that was sustained. When an amended declaration was filed and when pleading day came a person representing himself as the town clerk (and he was such) gave the attorney notice that the town did not require his services, and the counsel withdrew. Afterwards, this same attorney on behalf of certain citizens of the town (some citizens now moving) made application to intervene as parties-defendant, which applica-

tion was denied, and no defense by the town was presented and the judgment obtained without opposition.

"We do not mean to go into the question as to whether or not the intervention should have been allowed, only to say there may have been as many intervention petitions as there were freeholders in the town of Anthony, and if petitioners were wronged they could have appealed. These same citizens did nothing more."

He also said "Everyone was worked up to high degree of enthusiasm, the mayor and councilmen sharing the civic enthusiasm, and did acts that were unauthorized, but not corrupt and fraudulent acts, and no conspiracy. They borrowed the money to build the highway, and did build the highway with it or a part of it, but the fatal error was made when the two right-angle turns of highway were made in town, and the county road department refused to accept the route, with the result that the town was not 'put on the map,' but later abolished. Solicitor for complainant argues that because the town agreed with the plaintiff *not* to defend the suit when the town had a defense, such agreement was a fraud, and that Lawton C. Sims and the officials of Anthony are guilty of fraud or collusion, and that plaintiff is guilty of fraud in bringing suit to collect a debt that he knew was not due.

"If the plaintiff's intestate money was used to build streets or highways in the town, and the intestate's administrator knew it, he should be removed as administrator if he did not try to collect it. Instead of building a highway for town, suppose a municipal building for the council and town officials, had been erected with the money borrowed, and for which notes had been given, could the town honestly have said because the town council had no authority to give you the note for your money you loaned it to build the structure,

although the town has had and received your money and built the house, you cannot have a judgment against the town, and if you propound interrogatories and ask us about it, and we answer the truth, then that constitutes a fraud. I do not so understand the law to be."

He also said: "The effort was to show that the town as a municipality never received the money of E. C. Sims. This contention is not tenable, for the town by its officials placed the money to the order of Walker, with other money loaned the town, and from the total sum placed at Walker's disposal the road was built; and there was an excess and the town accepted it and added to other funds in its treasury paid Mrs. Bryson.

"It appears to me that there is no pretext to allege a fraudulent conspiracy and combination from the acts and doings of the council of the town. There was a big mass meeting by the citizens on January 6th, 1925, and a full discussion of purpose of the mass meeting. Certain citizens appeared before the County Commissioners and a plan was discussed, and the County Commissioners agreed to adopt as a part of the road what is termed the Eastern Route, or 'Revised Route B.' This was done Jan. 6th, 1925, and four days later the money was deposited in bank to the credit of county engineer.

"Men do not have such publicity about their conspiracies to defraud, and I am satisfied there was no intentional wrongdoing on the part of the town councilmen."

Then he made his finding as follows:

"I am of the opinion that inasmuch as this is an action to impeach a judgment because it was obtained by a fraudulent conspiracy between the judgment plaintiff and the city officials, the bill should be dismissed, as the proof does not sustain this allegation.

"The town government has been abolished, and some trustees appointed to wind up the old municipal affairs, and if they desire to take action they should be allowed to do so, and the order of dismissal will be without prejudice to the right of the trustees to take such action relative to said tax sale certificates that have been referred to in this bill that they may deem proper.

"It is not intended that the trustees may file another bill to impeach this decree, but as to the tax sale certificates take such action that they may desire. The town of Anthony neglected to take action when the suit resulting in judgment was pending. I do not intend to encourage their negligence by allowing it to file another suit to impeach this judgment."

Now there can be no doubt that the town officials received the money which the lawsuit was instituted to recover and that the money was loaned to the town for the purpose of constructing a street through the town. That a large part of the money was used for the purpose of constructing the street and that part which was not used for that purpose was used for the payment of municipal debts and for other municipal purposes. It is well settled that one may recover on the common count for money payable to the plaintiff for money had and received by the defendant for the use of the plaintiff in all cases where the defendant has obtained money which he ought to refund and this applied to municipalities as well as to individuals. See St. Johns Electric Co. v. City of St. Augustine, 81 Fla. 588, 88 Sou. 387; Cullen v. S. A. L. Ry. Co., 65 Fla. 122, 58 Sou. 182; Bishop v. Taylor 41 Fla. 77, 25 Sou. 287; Gordon v. Camp, 2 Fla. 422.

In 44 C. J., page 1146, it is said:

"When money is borrowed by a municipal corporation

without authority of law, but is used and applied for legitimate purpose, the corporation is liable on principles of equity and justice, as on an implied assumpsit, for money had and received."

In Allen v. Intendant and Councilmen of Lafayette, 89 Ala. 641, 8 Sou. 30, 9 L. R. S. 497, the Supreme Court of Alabama said:

"Property owners and taxpayers, residents of a municipality, may maintain a bill in equity against the corporate authorities, to enjoin the payment of warrants issued without authority of law; but if it appears that although the warrants are void, the holder has a valid claim against the corporation for the money advanced on them, the injunction will not be retained."

And also said:

"When money is borrowed by a municipal corporation without authority of law, but for a legitimate purpose, and is used and applied for that purpose; although the warrant issued to the lender may be *ultra vires* and void the corporation is liable on principles of equity and justice, as on an implied assumpsit for money had and received; but this principle does not apply where there is an express prohibition of the power to borrow money."

It will be found that the weight of authority is in accord with the expressions above quoted from the Alabama Court.

We are unable to say that the findings of the Chancellor were clearly erroneous and, therefore, the decree should be affirmed.

It is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, and TERRELL, J. J., concur.