THE BOARD OF PUBLIC INSTRUCTION, Washington County, a Corporation, v. MRS. W. M. COOEY.

175 So. 219.
Opinion Filed June 4, 1937.

592

*Reeves Bowen* and *James N. Daniel*, for Plaintiff in Error;

*John H. Carter* and *John H. Carter, Jr.*, for Defendant in Error.

BROWN, J.—This case involves the right of an assignee of the lender to recover on a common count for money had and received the sum of ten thousand dollars with interest thereon which had been loaned to the Board of Public Instruction of Washington County for an authorized purpose but at a time when a similar loan made two years theretofore had not been paid.

This writ of error brings before us a judgment obtained by Mrs. W. M. Cooey, a widow, against the Board of Public Instruction of said County upon a second amended declaration consisting of two counts. The first count alleged that on October 5, 1925, there being no money in the County school fund applicable to the payment of outstanding school warrants issued by the defendant, or for paying legitimate expenses incurred in operating the public schools of said county, the defendant on said date obtained a loan of money from the plaintiff in the sum of fifteen thousand dollars for the purpose of paying outstanding school warrants and legitimate expenses incurred in operating the public schools of the county during the school year of 1925-1926, and as evidence of said loan secured and delivered its warrant payable June 30, 1926, for said sum, bearing interest at 7 per

cent. until paid. That said warrant was not paid at maturity and was surrendered to the Board and canceled, and a new warrant was issued July 5, 1926, payable June 30, 1926, for a like sum. That said warrant nor the interest thereon was ever paid, but was surrendered to said Board on July 5, 1927, in part exchange for a warrant of twenty-five thousand dollars, therein agreeing that it was so indebted to the plaintiff and agreeing to pay the same on June 30, 1932, with interest at eight per cent., pursuant to a resolution adopted by the defendant Board. That said warrant is unenforceable on account of the inclusion therein of an additional loan of ten thousand dollars obtained by the defendant from the plaintiff contrary to the statute in such case made and provided. That defendant has paid the interest on said fifteen thousand dollar loan up to June 30, 1931. That there is now due plaintiff on said loan the sum of fifteen thousand dollars with interest from June 30, 1931.

The second count is a common count for money had and received in the sum of ten thousand dollars with interest thereon from July 7, 1930, at the legal rate. The bill of particulars attached to said count shows that it was based upon cash received by the defendant from the plaintiff's assignor, Mr. W. M. Cooey, on July 5, 1927, which cash was used in the maintenance of the public schools of Washington County in the scholastic year of 1927-1928, the interest on which loan had been paid up to July 7, 1930. The suit was begun on June 17, 1933.

To the first count the defendant filed a plea of the general issue, but to the second count it filed a plea, not only of the general issue, but a special plea, alleging that on October 5, 1925, and during the school year ending June 30, 1926, at a time when there was no money in the county school fund of the county applicable to the payment of outstand-

ing school warrants or legitimate expenses incurred in operating the public schools of said county, the defendant borrowed the sum of fifteen thousand dollars from W. M. Cooey for the purpose of paying outstanding school warrants and legitimate expenses incurred in operating the school, no part of which has ever been paid; and that on or about July 5, 1927, and during the school year ending June 30, 1928, while the said sum of fifteen thousand dollars was owing by the defendant to the said W. M. Cooey and was wholly unpaid, the said W. M. Cooey lent to the defendant the further sum of ten thousand dollars. That this alleged indebtedness of the defendant on account of said ten thousand dollar loan was by him assigned to the plaintiff and is the same indebtedness sought to be recovered in and by the second count of said declaration.

Plaintiff demurred to defendant's second plea to the second count of the amended declaration upon the ground that its allegations were insufficient in law to constitute any defense, and upon the further ground that the allegation that the defendant, being already indebted to said W. M. Cooey in the sum of fifteen thousand dollars for borrowed money, borrowed the additional sum of ten thousand dollars declared on in the second count, was insufficient in law to relieve the defendant from liability for said money under a common count for money had and received.

This demurrer to the defendant's second plea to the second count was sustained by the court.

On March 23, 1935, the plaintiff filed an additional or third count to her declaration claiming interest at the legal rate upon the ten thousand dollars sued for in the second count, alleging that the defendant had promised verbally and in writing to pay such rate and did pay interest at that rate until June 7, 1930. To this count the defendant filed pleas similar to those filed to the second count of the

amended declaration, to which the defendant demurred, which demurrer was sustained by the court.

Finally the case was submitted to the Judge for trial without the intervention of a jury upon the pleadings and the written stipulation of facts filed before him. This written stipulation of facts is not embraced in this record, so the case must be considered by us on the rulings of the court upon the pleadings, as above set forth. The Circuit Judge rendered a judgment in favor of the plaintiff on each count, assigning her damages at $20,136.70 for principal and interest under the second and third counts, and rendered judgment for the aggregate sum.

No assignment of error was taken to the judgment of the court on the first count of the declaration, but error is assigned to the ruling of the court sustaining plaintiff's demurrer to defendant's second plea to the second count of the amended declaration, and to its order sustaining plaintiff's demurrer to defendant's plea to the third count, as well as to the court's action in rendering final judgment for the plaintiff for any amount under the second and third counts of the amended declaration.

Said second count is a common count for the recovery of the sum of ten thousand dollars, money had and received by the School Board, for the use of Mrs. Cooey. The second plea to the second count in substance alleged that the ten thousand dollars sued for in said count cannot be recovered because it was borrowed by the School Board from Mrs. Cooey's assignor in 1927 for current school expenses when the school board already owed the said W. M. Cooey fifteen thousand dollars that it had borrowed from him in 1925 for current school expenses which had never been repaid. The theory upon which said second plea is based is that the ten thousand dollars borrowed by the School Board under such circumstances cannot be recovered be-

cause it was borrowed by the defendant and lent by the plaintiff in violation of that part of Section 566 C. G. L. which reads as follows: "which said sum so borrowed shall be paid in full before the Board shall be authorized to borrow on the estimate for any succeeding year."

It is not denied that this money which was borrowed from Mr. Cooey was used for legitimate school purposes which it was the duty of the Board of Public Instruction to conserve under Section 561 C. G. L, which section prescribes the general duties and powers of the County Board of Public Instruction. Chapter 5390, Acts of 1905, from which Section 566 C. G. L. as amended by Chapter 6828, Acts of 1915, was derived, it did not embrace the clause above quoted. It imposed no restrictions as to how much or how often school boards could borrow money to pay outstanding warrants and legitimate expenses. The amendment of 1915 gives us Section 566 as it stands today which embraces some restrictions on the borrowing power not in the original Act that the Legislature no doubt found necessary from practical experience in the various counties. Said Section 566 C. G. L authorizes the County Board of Public Instruction, when there is no money in the County School Fund applicable to the payment of outstanding warrants, to borrow money at interest not to exceed 8 per cent. per annum for the purpose of paying outstanding warrants and for the further purpose of paying any and all legitimate expenses incurred in operating the schools of the county; provided, however, that it shall be unlawful for any such Board to borrow any sum of money in any one year in excess of 80 per cent. of the amount estimated by them to be required for the maintenance of the necessary common schools of their county for the next ensuing scholastic year, as prescribed by Section 561, "which sum so borrowed shall be paid in full before the Board shall be authorized to borrow

on the estimate for any succeeding year." The remainder of the section is not material here.

Said plea did not allege that the sum borrowed was in excess of 80 per cent. of the amount estimated for maintenance of the schools for the ensuing scholastic year. It merely alleged that when the ten thousand dollars was borrowed the fifteen thousand dollars which had been borrowed two years before had not been paid. In 44 C. J., page 1146, it is said:

"When money is borrowed by a municipal corporation without authority of law, but is used and applied for a legitimate purpose, the corporation is liable on principles of equity and justice, as on an implied assumpsit, for money had and received. However, this principle does not apply where there is an express prohibition of the power to borrow money."

In the case of Johnson v. Town of Anthony, 116 Fla. 302, 156 So. 732, it was held that one may recover on the common count for money had and received the amount of a loan made to a town, which was used to construct streets and for other municipal purposes, though the borrowing of money by the town was an *ultra vires* act. In that case, Mr. Justice BUFORD, speaking for this Court, said:

"In Allen v. Intendant and Councilmen of LaFayette, 89 Ala. 641, 8 Sou. 30, 9 L. R. S. 497, the Supreme Court of Alabama said:

" 'Property owners and taxpayers, residents of a municipality, may maintain a bill in equity against the corporate authorities, to enjoin the payment of warrants issued without authority of law; but if it appears that although the warrants are void, the holder has a valid claim against the corporation for the money advanced on them, the injunction will not be retained.'

"And also said:

" 'When money is borrowed by a municipal corporation without authority of law but for a legitimate purpose, and is used and applied for that purpose; although the warrant issued to the lender may be *ultra vires* and void, the corporation is liable on principles of equity and justice, as on an implied · assumpsit for money had and received; *but this principle does not apply where there is an express prohibition of the power to borrow money.'* (Italics supplied.)

"It will be found that the weight of authority is in accord with the expressions above quoted from the Alabama Court."

The opinion in the Alabama case above quoted from in the opinion of Mr. Justice BUFORD was written by Mr. Justice McCLELLAN, afterwards for some years Chief Justice of the Supreme Court of Alabama. In the cited case of Allen, v. the Town of LaFayette (in which town the writer commenced the practice of law), Mr. Justice McCLELLAN wrote a very able and comprehensive opinion which goes into this question very fully and makes it unnecessary for us to discuss the reasons which lead to the conclusion reached by him and quoted in the said opinion by Mr. Justice BUFORD. One brief quotation from that opinion might well be made however. There are some courts which hold that no recovery shall be permitted on an implied contract to pay for money borrowed, or services rendered or materials furnished to a municipality where an express contract therefor was *not authorized,* or was in excess of the debt limit fixed by law. See some of the cases cited in note on pages 1117-1125 of 27 L. R. A., N. S. In regard to this feature of the question Mr. Justice McCLELLAN, among other things, had this to say:

"We cannot perceive that the doctrine is open to objection on the ground of its supposed evil tendencies and

consequences. It is shorn of all perilous possibilities by the limitations which hedge it about. It cannot obtain where the charter, or other statute operating in the permises, contains a prohibition of the power to borrow money, since a promise cannot be implied in the face of express law, but only in cases where, as in this one, there is merely a defect of power. 1 Dillon, Mun. Corp. 461.

"It involves no danger of the municipality being charged with moneys which have been appropriated by its officers to their own use, or even to the use of the corporation, except in the manner, to the extent and for the purposes authorized by the charter, as in either case the implication will not arise, and corporate liability will not attach. None of the evils which are justly supposed to result from the power to borrow money, which are not also attendant upon the capacity to incur debts, and which therefore have led to a denial of the former power unless expressly or by necessary intendment conferred, while the latter is admitted as incident to ordinary municipal functions, can possibly supervene where the money which has been borrowed has also been honestly devoted to expenditures for which the corporate authorities might have incurred debt. And, to declare liability in the one instance, and deny it in the other, on the ground of evils which pertain alike to both, would be an anomaly to which we cannot subscribe. Indeed, we apprehend that the power to create debts may be productive of more evils in municipal government than could, in the nature of things, result from the doctrine we are considering, when would-be lenders of money come to understand that the return of their proverbially timid capital depends, not upon the contract they make, but on the faithful application of the loan to certain specific objects, by persons over whom they have no control."

In the case of Logan V. Board of Public Instruction, 118

Fla. 184, 158 So. 720, Mr. Chief Justice WHITFIELD, speaking for the Court had this to say:

"Where money is borrowed in good faith by a governmental unit and the money is used for an authorized purpose, the unit may be liable on principles of equity and justice, as on an implied assumpsit, for money had and received, provided such borrowing is not expressly forbidden by applicable law. See 44 C. J. 1146 and authorities cited.

"In an action against a governmental unit for money had and received, a written order or promise to pay borrowed money may be adduced in evidence to show the amount received for use in a lawful purpose even though an action might not be maintained on the written order or promise to pay."

See also Nuveen & Co. v. City of Quincy, 115 Fla. 510, 156 So. 153.

From what has been said and quoted above, it is clear that the judgment of the court below should be affirmed, unless the defendant Board of Public Instruction was expressly *prohibited* from borrowing the ten thousand dollars referred to. Plaintiff in error insists that it was prohibited. The case then turns upon whether the clause of Section 566 C. G. L. relied on by plaintiff in error amounts to a prohibition or a mere absence of authority. When the Board borrowed this ten thousand dollars from Mr. Cooey, was it prohibited from doing so, or was its act merely *ultra vires*? It is not denied that the Board did borrow fifteen thousand dollars from Mr. Cooey two years previously, and had failed to pay it when the second sum of ten thousand dollars was borrowed. The language of the statute in question is "which said sum so borrowed shall be paid in full before the Board shall be authorized to borrow on the estimate for any succeeding year." Our view is that this

language does not constitute an express prohibition of the power to borrow money, under the circumstances here involved: it merely shows that the Board was *without authority* to borrow it—a "defect of power." So, the warrant which they issued to Mr. Cooey was issued without authority, and the suit could not be based on such warrant, nor was it so based. The second count rests upon the broad equitable principle, which can be availed of by a count for money had and received, that where one has received from another money or property which in equity and good conscience he should refund, the law will compel him to do so, at least in so far as the rendition of a judgment will effect such compulsion. This applies to money loaned to a public corporation, even where it has no authority to borrow money, if the money so borrowed is used for a purpose within the legitimate powers of such corporation. It is only when the law expressly or by necessary implication prohibits such a corporation from borrowing money that this equitable principle cannot be applied. In such a case the courts will not allow their remedies to be used to indirectly enable parties to do what the law prohibits them from doing. Otherwise many wholesome prohibitory provisions of our laws would be rendered nugatory. In other words, such a corporation will not be held to be impliedly bound to do that which the law expressly prohibited it from doing. See Jones v. Pinellas County, 81 Fla. 613, 88 So. 388; Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14. In the latter case it was held that even though a contract for public improvements in a city had been completed, if the contract was illegal and void because it was made in violation of the express charter provision requiring the letting of contracts to the lowest responsible bidder, a taxpayer could maintain a bill to restrain the paying out of public moneys upon such a

contract. In that case we quoted from McQuillin on Municipal Corporations, where he says: "If the charter or the statute applicable requires certain steps to be taken before making a contract, and it is *mandatory in terms,* a contract not made in conformity therewith is invalid, and ordinarily cannot be ratified, and usually there is no implied liability for the reasonable value of the property or services of which the municipality has had the benefit."

In the case of Logan v. Board of Public Instruction, *supra,* Mr. Chief Justice WHITFIELD, speaking for this court, in construing Section 566, C. G. L., in connection with Section 717, observed that:

"If by intendment or in principle Section 566 (458) C. G. L. is applicable to the funds of Special Tax School Districts so as to impose an express limitation upon the authority to borrow to 80% of the estimated amount required to maintain the necessary common schools for the next ensuing scholastic year, the provisos to the section preserve the integrity of outstanding debts, and do not *require* debts to be paid in full by the board 'before being permitted to borrow eighty per cent. on the estimate for the next ensuing year.' The section certainly does not prohibit the borrowing of money before the previous debts are paid in full, see later Act, Chapter 13297, Acts 1927; therefore the implied power to incur indebtedness for proper school purposes with the approval of the county board of public instruction as recognized by Section 717 (576) C. G. L., is not specifically limited by statute, though efficient and faithful administration of the authority and duties conferred by the statute demands that money should be borrowed only when and to the extent that it is imperatively necessary to conduct the schools as required by the statutes. See Sec. 710 (569) 711 (570) 561 (454) 717 (576) C. G. L."

While the facts of that case are not the same as those here, the above quotation shows that this court has already held that Section 566 does not *prohibit* the borrowing of money before the previous debts are paid in full. Therefore, inasmuch as this statute, nor the clause therein hereinabove quoted, does not amount to an express prohibition on the power of the board to borrow on the estimate for any succeeding year until sums so borrowed in previous years should have been paid in full, but merely shows that the board *lacked authority* so to borrow, the said second plea did not set up a good defense to the count for money had and received which was the second count of the amended declaration.

Our holding in this case appears to be supported by the decided weight of authority in similar cases, where school boards had borrowed money for necessary and legitimate school purposes, either without statutory authority, or in excess of their statutory debt limit, but which moneys they were nevertheless in equity and good conscience bound to return to the lender. The cases dealing with this question are reviewed in an annotation beginning at page 1291 of 50 A. L. R.

For the above reasons, the judgment of the trial court is hereby affirmed.

Affirmed.

ELLIS, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.