SPECIAL TAX SCHOOL DISTRICT No. 1 OF ORANGE COUNTY, *et al.,* v. HERMAN HILLMAN and P. PHILLIPS.

179 So. 805.
Division B.
Opinion Filed March 8, 1938.
Rehearing Denied April 1, 1938.

*G. B. Fishback,* for Appellants;

*Hugh Akerman* and *William H. Dial,* for Appellees.

BROWN, J.—The general question here presented is whether a court of equity can decree that the vendors have a lien for the unpaid purchase price on land which they had sold and conveyed to the Trustees of a special tax school district, to secure which the Trustees, as such, had

executed their notes and mortgage on the land, and afterward erected a school building thereon, where neither such Trustees, nor the school district had any lawful authority to make the purchase or to execute the notes and mortgage.

This appeal is from two interlocutory orders, one denying a motion to dismiss the bill of complaint, and the other striking certain paragraphs and refusing to strike one paragraph of defendants' answer to the bill of complaint.

On October 12, 1925, Charles Lord, P. Phillips and Herman Hillman, each owning a one-third interest in "Block 'H' of Eola Park Heights, according to plat thereof recorded in Plat Book 'H,' page 33, public records of Orange County, Florida," conveyed said property to C. E. Howard, R. P. Buckmaster and Ruth Godfrey, as Trustees of Special Tax School District No. 1, Orange County, Florida, their successors and assigns, for a consideration, the total amount of which is not disclosed by the deed. A promissory note in the amount of $40,000.00, due on or before twenty years after October 12, 1925, with interest at 8 per cent. per annum, payable semi-annually, was given to each of the three grantors by said Trustees. A mortgage on said property, of even date therewith, to secure the unpaid part of the purchase price of $120,000.00 was executed and delivered to the three grantors named by the aforementioned Trustees, as Trustees of said district.

Herman Hillman and P. Phillips, on June 20, 1933, filed their bill of complaint, which was subsequently amended, against Special Tax School District No. 1 of Orange County, Florida, and certain named individuals as Trustees of said district, the Board of Public Instruction of Orange County, Florida, and certain named individuals as constituting said Board, praying for an accounting, and that the

court decree that complainants have a lien upon an undivided two-thirds interest in said real property superior to the rights of defendants, or any of them, or of any person, firm or corporation claiming or acquiring a lien thereon from and after December 9, 1925; that complainants have foreclosure of their lien as provided by law upon their undivided two-thirds interest in said property; that it be sold to satisfy said lien; and that complainants have a right to bid at said sale.

The bill of complaint, as amended, after setting forth the facts heretofore stated, alleged in substance that Special Tax School District No. 1 and the Board of Public Instruction for Orange County, by reason of Orlando's increased population, needed land on which to construct and operate public free schools; that the proprety was purchased for $125,000.00, $5,000.00 being paid down, and the unpaid balance being secured by notes and a mortgage on the property; that no part of the balance of the principal has been paid; that each installment of interest was paid up to and including that due October 12, 1932, but defendants failed and refused to pay the installment of interest, amounting to $1,666.66, due April 12, 1933, and have since failed and refused to pay any interest although due demand has been made upon them; that the note made to Charles Lord, and whatever interest Charles Lord had in said land and mortgage subsequent to October 12, 1925, were assigned to Robert Hyer of Orlando, Florida, and complainants are informed and believe that defendants have discharged said obligation on terms satisfactory to said Robert Hyer, but defendants have refused to pay complainants any further sum on said agreement, and have repudiated the entire obligation to complainants; that when said property was sold to said School District, it comprised an entire city block in the City of Orlando, and was well

worth the agreed price of $125,000.00; that defendants thereafter took possession of said land and erected thereon a large school building, which complainants are informed cost approximately $300,000.00; that since the sale of said land, defendants have been in complete and undisturbed possession thereof, and since completion of said building, defendants have occupied and are now in complete enjoyment and possession of said property; that at the time of the sale of said property, complainants accepted said notes and mortgage executed and delivered by defendant School District; that complainants are owners and holders of two of said notes, each in the principal sum of $40,000.00; that defendants have suggested and complainants allege it to be a fact that said notes and mortgages are void and unenforceable as constituting nothing in law, because the debt was not created in accordance with the statutes of Florida; that it is provided by law that the County Board of Public Instruction shall apply to the County Commissioners, who shall call an election for the purpose of authorizing the creation of a debt by the County Board of Public Instruction, and none of these proceedings were had; that said notes and mortgage being void, complainants are entitled to a vendor's lien upon their undivided two-thirds interest in said property, in the principal sum of $80,000.00, with interest at 8 per cent. per annum from April 12, 1933, because each owned an undivided one-third interest in said property, and each holds one of said notes for $40,000.00; that complainants are entitled to the foreclosure of said lien; that defendants had actual and complete knowledge of the non-payment of the amounts due complainants, the rights of complainants in and about the premises and their lien upon said undivided two-thirds interest therein; that defendants are in exclusive possession of said property, and the public records of Orange County show no convey-

ance of or lien upon an undivided two-thirds interest therein; that complainants' lien has been a public record since December 9, 1925, and complainants' vendor's lien is superior to the rights of defendants, or any firm, person, or corporation claiming any right, title or interest in said two-thirds undivided interest in said property since said date.

Motion to dismiss the bill as amended was made on the grounds that the bill contained no equity, that complainants' claim is barred by the statute of limitations, and that complainants have accepted other security for any lien they may claim. The motion was denied by the court.

The defendants filed their joint answer to the bill of complaint in which, after denying certain material allegations of the bill, they answered the bill as an entirety. Paragraph 9 of the answer averred that the lands were not worth more than $50,000.00 at the time of the taking. Paragraph 10 of the answer averred that complainants, at the time of the sale, knew the property was to be used as a site for a school building, but that they stood by, permitted and encouraged the school officers to erect thereon a building at a cost of $300,000.00, and it is inequitable and unjust now to permit complainants to enforce any lien they might otherwise have against the property, and from the nature of the improvements on said lands, the same cannot be removed without wholly destroying the value thereof. The averments of paragraphs 11, 12, and 13 of the answer are not material on this appeal. The answer concluded with a motion to dismiss the bill of complaint.

Motion was made to strike paragraphs 9, 10, 11, 12 and 13 of the answer. The court, by its order, denied the motion as to paragraph 9 of the answer, and granted the motion as to paragraphs 10, 11, 12 and 13 of the answer; and denied the motion to dismiss the bill of complaint. Defendants appealed. On this appeal complainants cross-

assign as error the denial of their motion to strike paragraph 9 of the answer.

The first question presented is whether equity will permit complainants to enforce a vendor's lien on the land in view of the fact they took notes and a mortgage thereon as security for the balance of the purchase price.

The bill of complaint contained an allegation to the effect that defendants suggested to complainants, and complainants allege it to be a fact, that the notes and mortgage are void because the debt was not created in accordance with the statutes of the State of Florida, and that they are therefore unenforceable as constituting nothing in law. It is conceded in the brief of appellants, defendants below, that said notes and mortgage are void.

The Board of Public Instruction in each county is made a body corporate and may acquire and hold real and personal property and perform other corporate acts for educational purposes. Section 52 C. G. L. and Sections 717 C. G. L., 576 R. G. S., provides that: "The Trustees of any school district shall be a corporation and may hold property, sue and be sued, and perform other corporate functions, and perform the usual duties necessary to provide buildings, repair the same, and to purchase libraries and other school appliances; provided, that no debt shall be created without the approval of the County Board of Public Instruction." Section 17 of Article XII of the Constitution provides for the issuance of bonds by Special School Districts whenever a majority of the qualified electors who are freeholders shall vote in favor of such issuance, and Sections 720-740 C. G. L. provides the method of the issuance of bonds by Special School Districts for the purpose of acquiring, building, enlarging, furnishing or otherwise improving buildings or school grounds for the exclusive use of the public free schools within the district, giving strict

regulations with reference to the holding of an election and the terms and conditions of the bonds. But the particular statute which is pertinent and controlling here is Section 509 C. G. L., 436 R. G. S., which reads as follows:

"The board of county commissioners of any county in this State, upon the request of the board of public instruction in such county, after an affirmative vote of the qualified voters who are taxpayers therein and have paid all taxes due by them for two years next and preceding said election in any special tax school district, or county, are hereby authorized to contract debts for the purchase of real estate to be used for educational purposes for the erection of school buildings and to pay such debts out of the current income of any year, or out of the income of succeeding years, and are authorized to borrow money, from time to time, as occasion may require to discharge any debt or liability incurred for the purchase of real estate for such purpose, which debt shall be a charge or lien only upon such special tax school district or county as the case may be: Provided, that the necessary expenses of maintaining the schools in any county during any year shall constitute the first claim against the school fund of that year."

It is perfectly apparent that the Trustees of this school district did not observe the statutory requirements for creating an obligation of the district, but themselves purchased the land and gave notes and a mortgage for the balance of the purchase money, and although this was done for the purpose of securing a site for a school building, which was a legitimate purpose if the proper steps had been taken and the people who were to bear the burden were given a chance to vote on it, the purchase of the property and the giving of the notes and mortgage were all done without any authority whatever. Yet the fact remains that the individuals who owned the land made a valid conveyance of the property

to the Trustees as Trustees for the Special School District, and such Trustees entered into possession and thereafter erected a school building thereon; $5,000.00 of the purchase money was paid at the time, the deed was duly executed and delivered and vested the title in the Trustees for the benefit of the district. Thus, unless there be some legal or equitable relief, the district became unjustly enriched at the expense of the former owners of the land.

As we have seen, the action of the Trustees in giving the notes and mortgage was void; nor did their subsequent action in erecting a school building thereon waive this lack of authority or estop the district from showing such lack of authority. As we held in the case of State, *ex rel.* Nuveen, v. Grier, 88 Fla. 249, 102 So. 739, "the principle of estoppel does not operate to confer authority."

A vendor's lien is a creature of equity, a lien implied to belong to a vendor for the unpaid purchase price of land, where he has not taken any other lien or security beyond the personal obligation of the purchaser. Rewis v. Williamson, 51 Fla. 529, 41 So. 449; Bowen v. Grace, 64 Fla. 28, 59 So. 563; De Long v. Marshall, 66 Fla. 410, 63 So. 723; Johns v. Seeley, 94 Fla. 851; 114 So. 452. The lien does not result from agreement, but is given by implication of law, as an incident to the debt, and is enforceable in equity where the vendor is entitled to it. Shaylor v. Cloud, 63 Fla. 608, 57 So. 666, 39 L. R. A. (N. S.) 1171 Ann. Cas. 1914A 277; Johnson v. McKinnon, 45 Fla. 388, 34 So. 272; Edelson v. Quinn, 123 Fla. 670, 167 So. 535.

A vendor's lien is not waived by the taking of the personal note or personal bond of the vendee to pay the purchase price, as these are regarded as mere evidences of the indebtedness. 27 R. C. L. 576, Sec. 319. But where the vendor takes the note of the vendee, indorsed by a third person, the taking is *prima facie* evidence of a waiver of

the vendor's lien, and the *onus probandi* is thrown upon the vendor to show the contrary. Bradford v. Marvin, 2 Fla. 463. And the general rule is that the vendor's lien is waived by the taking of a mortgage on the land, or on other property, or the taking of the personal responsibility of a third person, unless the lien is expressly retained, Woods v. Bailey, 3 Fla. 41; Nelson v. Swiggins, 111 Fla. 298, 149 So. 613; and the waiver is not affected by the fact that the security proves unavailing. McKeown v. Collins, 38 Fla. 276, 21 So. 103.

The mortgage and notes given in this case, being void and of no effect, did not afford any security for the purchase price, or for an equitable obligation to pay the value of the property conveyed. Therefore there was no waiver of the vendor's lien, or of an equitable lien, if there was such, by this admittedly abortive attempt to give the vendors security by way of a mortgage on the land conveyed.

Strictly speaking, a vendor's lien is incident to a contract or agreement to pay the agreed purchase money, for which a purchaser is unconditionally liable as primary debtor, 66 C. J. 1220, whereas in this case the Trustees of the school district had no authority to make the attempted contract. But in the case of Jones as Trustee, etc., v. Carpenter, 90 Fla. 407, 106 So. 127, this Court in an illuminating opinion by Mr. Justice TERRELL, recognized and enunciated the doctrine of equitable liens, and held that an equitable lien exists independently of any special agreement, and that equity will enforce it on the principle that one person, having gotten control of an estate of another, ought not in conscience to keep it, as between them, without making due compensation therefor; that equitable liens arise from two sources, (1) a written contract which shows an intention to charge some particular property with a debt or obligation, and (2) is declared by a court of equity upon general considerations

of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case.

In the case of Board of Public Instruction of Manatee County v. Cassidy, 122 Fla. 536, 155 So. 834, this Court held that a board of public instruction, which had authority to purchase lands for school purposes, and which accepted a deed to land for school purposes, and failed to pay for it, or to exercise its option to reconvey, was held estopped to deny liability to the vendor for the purchase price. In that case the Board of Public Instruction, having accepted Mrs. Cassidy's property and appropriated it to the use of the county for public school purposes, this Court held it could not later be heard to repudiate its contract and refuse to pay in the face of clear legal authority so to do. But in this case the Trustees of the School District were not vested with authority to purchase this property or to bind the district. Thus, in Board of Public Instruction v. Union School Furniture Company, 100 Fla. 326, 129 So. 824, this Court held that reformation of notes which the board could not under the Constitution validly execute would be refused; nor could the Legislature make them valid and binding. Yet we have held that where there was a mere lack of authority on the part of such a board to borrow money for legitimate school purposes, and there being no special prohibition in the statutes against such borrowing, the lender could recover on the common count for money had and received. See Board of Public Instruction v. Cooey, 128 Fla. 591, 175 So. 219.

Our conclusion is that the appellees are vested with an equitable lien, to secure the payment to them for their two-thirds interest in the actual value of the property which they conveyed to the Trustees of the school district and which the trustees of the district accepted and appropriated

for school purposes. We are dealing here with an executed contract so far as the appellees are concerned. They conveyed their land, as they had the power to do, to the Trustees in consideration of a promise to pay a certain price. Whether that price represented the real value of the property at the time the deed was made is, in view of the pleadings, a disputed question of fact. But whatever that value was, the appellees should be declared to have an equitable lien to protect or secure the payment to them of such value, together with legal interest thereon, after allowing credit for the interest payments already made by the Trustees. As the promise to pay the particular sum of $125,000.00 for the property was wholly *ultra vires* and void, a vendor's lien, strictly speaking, was not created, but in a court of conscience equity will decree and impose an equitable lien in the nature of a vendor's lien to protect and secure to the appellees the payment of their proportion of the actual property at the time they made the conveyance. It thus appears that the chancellor was without error in denying the motion to strike that paragraph of the answer which alleged that the value of the property was no more than $50,000.00.

The second question presented is whether the vendor's lien is barred by the statute of limitations. This question was also raised in the court below by the motion to dismiss the bill of complaint.

A vendor's lien is enforceable in equity at any time before the remedy at law for recovery of the unpaid part of the purchase price of the land is barred by the statute of limitations. See Shaylor v. Cloud, 63 Fla. 608, 57 So. 666, 39 L. R. A. (N. S.) 1171, Ann. Cas. 1911A 277; 27 R. C. L. 595, Sec. 343. The same rule would apply here; whether the lien we are dealing with will be denominated as an equitable lien, or a modified form of a vendor's lien; for

after all a vendor's lien is merely a particular form of equitable lien which has long been recognized.

Though a mortgage and notes were given in this case, yet they are, by the admission of both parties, void. Consequently to determine whether the action at law for the unpaid part of the purchase price of the real estate had been barred by the statute of limitations, we must consider whether the law action had been barred as to the implied promise to pay irrespective of the written evidences of such promise in the form of notes and mortgage.

It is contended that the statute of limitations applicable to the facts and circumstances existing here is Sec. 4663 (5) C. G. L., which provides that "an action upon a contract, obligation or liability not founded upon an instrument of writing, including action for goods, wares and merchandise sold and delivered, and on store accounts," must be brought within three years.

The *ultra vires* contract in this case was entered into on October 12, 1925; and interest was paid on the unpaid balance of the purchase price up to and including the semi-annual payment of October 12, 1932. However, no further payment of interest was made on said contract, and this bill of complaint was filed against defendants on June 20, 1935. There was no cause of action against defendants on the contract so long as payments of interest were being made when due. The statute of limitations begins to run against a contract from the time a cause of action accrues on it. Bennett v. Herring, 1 Fla. 287. Since less than three years had elapsed between the accrual of the cause of action and the filing of the bill of complaint, the statute of limitations had not barred the action at law on the debt. Therefore, since the cause of action at law on the debt was not barred by the statute of limitations, by analogy we are

justified in holding that the suit in equity to assert and enforce a lien on the property was maintainable.

The third question presented is whether, under the circumstances, it would be equitable to allow complainants to enforce a lien on the land after it had been so improved that the school district would lose more than the value of the land if it elected to abandon it. This question was raised below in the tenth paragraph of defendants' answer which was stricken by the trial court on motion of complainants.

If the Trustees had ever intended to abandon or reconvey this land, they should have done so before erecting an expensive school building upon it. Neither they, nor the district, can make the appellees suffer for what they themselves have voluntarily done in this regard. If the School District does not want to lose its building it may avoid that by paying the appellees what is equitably due them. The tenth paragraph of defendants' answer was properly stricken.

The orders appealed from are affirmed, and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

WHITFIELD, P. J., and CHAPMAN, J., concur.

TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J. (dissenting).—I think the vendors are entitled to a vendor's lien for the contract price of the land, and the Court erred in overruling the motion to strike the 9th paragraph of the answer.